22725

The STATE, Respondent v. Calvin HAWKINS, Appellant.

(357 S. E. (2d) 10)

Supreme Court

*Chief Atty. William Isaac Diggs* and *Asst. Appellate Defender Joseph L. Savitz, III, S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Solicitor J. Dupre Miller,* Bennettsville, *for respondent.*

Heard Jan. 5, 1987.

Decided May 26, 1987.

FINNEY, Justice:

The appellant Calvin Hawkins, Calvin McCoy and Johnny Addison were indicted for murder, burglary and arson arising out of the death, theft of property and burning of the home of Ernest L. Gibson. The appellant was convicted of all charges and received sentences of death for murder, life imprisonment for burglary and twenty years for arson. We reverse and remand for a new trial.

On March 27, 1985, after 7:00 P.M., ninety year old Ernest L. Gibson died from carbon monoxide poisoning during a fire at his home. The evidence revealed the victim suffered a broken neck prior to or during the early stages of the fire, that while he was disabled, kerosene was poured around him and intentionally incinerated. In addition, a television set was missing from the residence.

McCoy and Addison gave several conflicting statements, each of which were to some extent both exculpatory and inculpatory, and attributed varying degrees of culpability to

each other and the appellant in the commission of the crimes.

On the first day of trial after the jury panel was questioned but prior to individual voir dire, the Solicitor withdrew prosecution of Addison "at this time." Afterward Addison testified on the state's behalf. Over objection of appellant, the state was allowed to declare Addison a hostile witness. After the state rested its case in chief, appellant Hawkins presented several witnesses supporting the defense of alibi; however, the appellant did not testify. At the conclusion of appellant's case, defendant McCoy pled guilty to murder, burglary and arson. Sentencing of McCoy was deferred.

Subsequently, McCoy's guilty plea was published to the jury. The State was permitted to reopen its case and put McCoy on the stand not only in reply, but to *"tell all he knew about this situation."* [Emphasis supplied.] The state also called Deborah Jackson and recalled Billy J. Abercrombie. Thereafter, appellant, Calvin Hawkins testified during the guilt phase of the trial.

The appellant raises numerous issues asserting errors. This opinion will address only those pertinent to a resolution of the case.

First, appellant alleges the court erred in overruling appellant's objection to the Solicitor's reference to appellant as "Mad Dog" during voir dire, throughout the trial and closing arguments; that such references denied appellant due process of law and infected the proceedings with an arbitrary factor, in violation of the Eighth Amendment to the United States Constitution and South Carolina Code of Laws Annotated, § 16-3-20 et seq. (1976). This allegation is premised upon a series of references which had their inception during voir dire examination when the Solicitor inquired of a potential juror:

> Q. Have you ever heard of anyone referred to as "Mad Dog Hawkins?"
> A. No.

Appellant objected, and the court overruled the objection. The state then used the term "Mad Dog" in excess of forty times during the guilt phase and sentencing proceedings of

the trial. For example, at one point in the guilt phase argument, the Solicitor argued:

> ... If you hang around with the wrong crowd, you are going to get in trouble. He was hanging around with *Mad Dog* this night. He was in there and he saw *Mad Dog* pouring the kerosene around the old man. He saw *Mad Dog* putting the trail through the house. He saw *Mad Dog* on the porch when it lit ... [Emphasis supplied].

In another instance during the sentencing phase closing argument, the Solicitor said:

> ... Despicable? This crime warrants what the State is asking for. Mr. Hawkins—Mr. Hawkins, Calvin *"Mad Dog"* Hawkins. He says he has had the name since he was a young man. Well, he proved that it was deserving ... [Emphasis supplied].

The appellant, as well as McCoy and Addison, testified that he had acquired the nickname "Mad Dog." Unquestionably, it was permissible for the Solicitor to make inquiry sufficient to clarify appellant's identity. However, under the circumstances of this case, we find the excessive and repetitious use of the term denied appellant the right to a fair trial and infected the sentencing proceedings with an arbitrary factor, in violation of the Eighth Amendment to the United States Constitution and the laws of South Carolina.

In *Donnelly v. DeChristoforo*, 416 U. S. 637, 94 S. Ct. 1868, 40 L. Ed. (2d) 431 (1974), the United States Supreme Court stated that the relevant question in determining if an accused's rights were violated is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*, at 643, 94 S. Ct. at 1871.

The Supreme Court reaffirmed the *Donnelly* relevant-question test in *Darden v. Wainwright*, _____ U. S. _____, 106 S. Ct. 2464, 2476, 91 L. Ed. (2d) 144 (1986). In that case, the Court held that comments by the Solicitor failed to meet the test set out in *Donnelly v. DeChristoforo, supra,* because (1) the comment was an "invited response" to defense coun-

sel's argument, (2) the evidence against Darden constituted "overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges," and (3) the trial court several times instructed the jurors that their decision was to be made on the basis of evidence alone and the arguments of counsel were not evidence. *Darden v. Wainwright*, 106 S. Ct. at 2472-2473.

In the case at bar, we are of the opinion the *Donnelly v. DeChristoforo* test has been met. First, the Solicitor initiated use of the term "Mad Dog" over appellant's objection during the preliminary stages of the proceedings, and the prosecutor's repetition of the appellation throughout the trial was not an "invited response."

Second, the evidence against the appellant could not be considered overwhelming. The inconsistent testimony of McCoy and Addison as to the role of each accused in the crime constituted the primary evidence at trial.

Finally, the trial judge's instructions did not clearly admonish the jury that arguments of counsel could not be considered as evidence.

We note that in South Carolina, the test is similar to that followed by the Federal Courts. As this Court said in *State v. White*, 246 S. C. 502, 144 S. E. (2d) 481 (1965), [quoting *State v. Gilstrap*, 205 S. C. 412, 32 S. E. (2d) 163 (1944)]:

> The rule followed in this State, and we think in most jurisdictions, is that if upon the whole case, it appears to the Court that the defendant was prejudiced by the language used, as the result of which he did not have a fair and impartial trial, it would be the duty of the Court to reverse the case and remand it for a new trial. *State v. White*, 144 S. E. (2d) at 482.

We conclude that under the circumstances of this case, the Solicitor's intemperate use of the term "Mad Dog" was improper. It infected the trial with unfairness by arousing the passion and prejudice of the jury and interjected an arbitrary factor into the jury's deliberations. *State v. Thomas*, 287 S. C. 411, 339 S. E. (2d) 129 (1986).

Second, the appellant alleges error when the Assistant Solicitor argued to the jury: "You have seen no remorse ..." Appellant asserts that this statement, *inter alia*, violated

his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution to both testify in his own behalf during the guilt phase and to remain silent at the sentencing proceedings of his bifurcated trial.

The appellant testified during the guilt phase after the state reopened its case and McCoy had testified. Appellant did not testify during the sentencing phase. During his argument at the sentencing phase, the Assistant Solicitor said:

"The defense has put before you—"

The Court, on its own, immediately and properly interrupted and admonished the Solicitor.

"Do not go into their defense."

The Assistant Solicitor resumed his argument by saying:

"I ask you to consider all of the evidence. You have seen no remorse ..."

The Fifth Amendment privilege against self-incrimination extends to the penalty phase of a bifurcated capital proceeding. *Estelle v. Smith*, 451 U. S. 454, 101 S. Ct. 1866, 68 L. Ed. (2d) 359 (1981). As a corollary of the right to remain silent, a prosecutorial comment upon a defendant's failure to testify at trial is constitutionally impermissible. *Griffin v. California*, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. (2d) 106 (1965). Such comments may not be made either directly or indirectly. *State v. Goolsby*, 275 S. C. 110, 268 S. E. (2d) 31 (1980); *State v. Rouse*, 262 S. C. 581, 206 S. E. (2d) 873 (1974). See also cases cited in *State v. Robinson*, 238 S. C. 140, 119 S. E. (2d) 671 (1961). Arguments of this nature are especially egregious in the context of death penalty proceedings because they violate the Eighth as well as the Fifth Amendment. *State v. Sloan*, 278 S. C. 435, 298 S. E. (2d) 92 (1982); accord: *State v. Brown*, 289 S. C. 581, 347 S. E. (2d) 882 (1986); *Thompson v. Aiken*, 281 S. C. 239, 315 S. E. (2d) 110 (1984).

This Court ruled in *State v. Sloan, supra,* two years before this case was tried, that it was inappropriate for the solicitor to comment upon lack of remorse when a defendant had not taken the stand. After a warning

from the trail bench, counsel for the state persisted in referring to a lack of remorse on the part of the appellant. This Court would, once again, remind prosecutors that remorse is not an appropriate matter for consideration by the jury when a defendant pleads not guilty and does not testify.

We reverse and remand this case for a new trial.

NESS, C. J., and GREGORY, J., and LAWRENCE E. RICHTER, JR., Acting J., concur.

CHANDLER, J., not participating.