2335

The STATE, Respondent v. Willie McFADDEN, Appellant.

(458 S.E. (2d) 61)

Court of Appeals

*Asst. Appellate Defender Robert M. Dudek,* of *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Deputy Atty. Gen. Salley W. Elliott,* Columbia, and *Sol. Wade S. Kolb,* Sumter, *for respondent.*

Heard Mar. 9, 1995.

Decided Apr. 17, 1995; Reh. Den. June 7, 1995.

GOOLSBY Judge:

A jury convicted Willie McFadden of first-degree burglary and first-degree criminal sexual conduct. McFadden appeals several trial court rulings relating to the admission of evidence and the solicitor's comments during closing arguments. We affirm.

Laura Green, an elderly Sumter County woman, was sexually assaulted in her home during the early morning hours of January 2, 1992. Frank Vaughn, who rented a room in Green's home, testified Green awakened him around 2:00 a.m. on January 2, 1992; Green had blood around her month, looked as if she had just gotten out of bed, and told Vaughn she had been assaulted; and Vaughn called the police. Green went to the emergency room where a doctor and nurse examined her and performed a rape protocol examination. The police collected bed clothing from Green's home for subsequent chemical analysis. After further investigation of the incident, the police arrested Willie McFadden.

## I.

McFadden first argues the trial court erred in refusing to grant his mistrial motion based on the fact that the solicitor introduced corroborating evidence of the sexual assault on Green before Green testified and that Green was subsequently declared incompetent to testify.

## A.

Frank Vaughn, the first witness at trial, testified about a statement Green made on the night of the assault.

McFadden argues that this statement constituted inadmissible hearsay and impermissible corroboration. We disagree.

Vaughn testified as follow: McFadden came to Green's house at approximately 7:00 p.m. on January 1, 1992, to pay rent for a house he leased from Green. Vaughn went to bed at approximately 10:00 p.m. Around 2:00 a.m., Green came to Vaughn's room awakened him. She had blood on her lip and appeared upset and excited. Green told him "that nasty thing that just paid me my rent come back and messed with me."

Evidence of an out-of-court statement is not admissible to prove the truth of the matter asserted unless an exception to the rule against hearsay applies. *Simpkins v. State*, 303 S.C. 364, 401 S.E. (2d) 142 (1991). This case involves the following two exceptions to the rule against hearsay that apply to prior consistent statements of a rape victim. First, in cases in which the victim testifies, evidence from other witnesses that the victim complained of the sexual assault is admissible in corroboration. This corroboration evidence is limited to time and place and must exclude details and particulars. *Jolly v. State*, — S.C. —, 443 S.E. (2d) 566 (1994). Second, under the *res gestae* exception to the hearsay rule, a victim's statement is admissible in evidence if the statement is made at a time substantially contemporaneous with the litigated transaction and is the spontaneous utterance of the mind while under the active immediate influence of the event. This exception is not subject to the limitations of the first exception. *Id.; State v. Schumpert*, — S.C. —, 435 S.E. (2d) 859 (1993). Whether statement is admissible under the *res gestae* exception to the hearsay rule depends on the circumstances of each and the determination is generally left to the sound discretion of the trial court. *State v. Harrison*, 298 S.C. 333, 380 S.E. (2d) 818 (1989). A victim's statement is admissible if it falls under either of these exceptions. *Jolly,* 314 S.C. 17, 443 S.E. (2d) 566.

The facts of this case show Green was upset and excited, was disheveled in appearance, and had blood on her lip when she made the challenge statement to Vaughn. Although Green is an elderly woman, the record does not support a conclusion that she was incompetent when she made the statement. We therefore hold the trial court did not abuse its discretion in admitting Vaughn's testimony about Green's statement under the *res gestae* exception to the hearsay rule.

## B.

The emergency room nurse, the second witness whose testimony McFadden argues should have been excluded, testified on direct examination about the rape protocol examination Green underwent. On cross-examination, the nurse recounted the statement Green gave to her about an incident that occurred one month earlier when a "boy" came to Green's home and sexually assaulted her. Green

reported to the nurse that her assailant that January night had the same voice as the boy who had assaulted her one month before. We hold the nurse's testimony about Green's recollection of the earlier assault was properly admitted because defense counsel, not the solicitor, elicited this testimony. *See State v. Washington*, 315 S.C. 108, 432 S.E. (2d) 448 (1992) (a defendant may not complain, on appeal, about the admission of evidence elicited by his own counsel). Defense counsel contends he would not have elicited the nurse's testimony about the prior incident had he known Green was not going to testify. The nurse's testimony, however, did not prejudice McFadden because he is an older man, not a young boy like Green described to the nurse. Further, the nurse testified Green told her she had not seen the boy from the earlier incident since that incident occurred one month before.

## C.

The third witness whose testimony McFadden challenges is the police officer who responded to the call at Green's home. McFadden's argument with respect to this testimony, however, is not properly before this court. Although the trial court sustained McFadden's objection to the officer's testimony about statements Green made to the officer, McFadden did not thereafter move to strike the testimony. *State v. Wingo*, 304 S.C. 173, 403 S.E. (2d) 322 (Ct. App. 1991) (when a witness give objectionable testimony and an objection is subsequently interposed and sustained, the issue, is not preserved for appeal unless the objecting party moves to strike the testimony).

## D.

Finally, McFadden challenges the testimony of the attending doctor in the emergency room the night of the assault on Green. The doctor testified he asked Green if she had been raped and she responded she had been. He further testified he obtained swabs from Green's genital area and noted recent trauma to the vagina. This testimony was properly admitted as medical history information the doctor obtained from Green for the purposes of diagnosis. *State v. Camele*, 293 S.C. 302, 360 S.E. (2d) 307 (1987); *see Miller v. State*, 194 Ga. App. 533, 390 S.E. (2d) 901 (1990) (wherein the

court held testimony from an emergency room doctor that the victim reported she had been raped was admissible as a statement made for the purpose of describing medical history).

## II.

McFadden next argues the trial court erred in admitting expert testimony concerning statistical probabilities because the witness was not an expert in this area and the population data base the witness used was too small. We disagree.

David McClure is a microbiologist employed but the South Carolina Law Enforcement Division (SLED) in the DNA analysis unit. He testified the DNA profile obtained from McFadden's blood sample matched the DNA profile of the semen present on several items obtained from Green, including a cervical swab, a cutting from her blanket, and a cutting from her bedspread. Over defense counsel's objection that McClure was not an expert in statistics, McClure testified "the probability of selecting an unrelated individual at random from the population having a profile matching Willie McFadden's is approximately one in 710 million blacks and one in 1.7 billion caucasians."

First, in South Carolina, DNA testing is an accepted scientific procedure and the statistical results of DNA testing are admissible at trial. *State v. Ford*, 301 S.C. 485, 392 S.E. (2d) 781 (1990).

Second, the qualification of a witness as an expert is a matter largely within the discretion of the trial court. *State v. Myers*, 301 S.C. 251, 391 S.E. (2d) 551 (1990). Generally, defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not to its admissibility. *Id.* Here, McClure testified about his educational background and experience in the area of DNA analysis and his previous qualification in state court as an expert witness in this area. The trial court did not abuse its discretion in qualifying McClure as an expert witness.

Further, the question of whether to admit or exclude testimony of an expert witness is also a matter largely left to the discretion of the trial court. *Id.* The trial court's decision to admit evidence will be upheld on appeal, ab-

sent an abuse of discretion. *Creed v. City of Columbia,* — S.C. —, 426 S.E. (2d) 785 (1993). Before McClure testified in front of the jury, the trial court heard detailed testimony from McClure about the creation and verification of the population data base SLED uses to determine the probability of two unrelated individuals having the same DNA profile. The trial court, therefore, did not abuse its discretion in admitting McClure's testimony concerning the population data base. The sufficiency of the evidence regarding the creation and verification of the population data base went to the weight and not to the admissibility of McClure's testimony and thus was a question for the jury. *See Berkeley Elec. Coop., Inc. v. South Carolina Pub. Serv Comm'n,* 304 S.C. 15, 402 S.E. (2d) 674 (1991) (in a law case tried before a jury, it is the jury that must decide what part of each witness's testimony it believes and what part it disbelieves); *cf. State v. Ford,* 301 S.C. 485, 392 S.E. (2d) 781 (1990) (expert testimony properly admitted at trial that the combination of DNA fragments found in the defendant's DNA would occur in only one out of 23 million North American blacks).

## III.

McFadden also argues the trail court erred in denying his mistrial motion based on he fact that the solicitor tried to elicit irrelevant testimony from McFadden about drug use at a nightclub that McFadden frequented. McFadden argues this was an improper attack on his character. We disagree.

During cross-examination, the solicitor asked McFadden if it would be "unheard of" for someone to sell crack cocaine and other drugs at the nightclub. McFadden testified he did not sell drugs and did not have anything to do with them. The trial court sustained defense counsel's objection to this line of questioning. Outside the presence of the jury, the trial court instructed the solicitor not to inquire into any "prior bad acts" of McFadden. The trial court denied McFadden's mistrial motion on the ground the solicitor had not asked McFadden about any prior bad acts that McFadden had personally committed. The record bears this out. We therefore hold the trial court did not abuse its discretion. *See State v. Washington,* 315 S.C. 108, 432 S.E. (2d) 448 (1992) ("The granting of a mistrial

is a matter within sound discretion of the trial judge, and his decision will not be disturbed on appeal absent an abuse of discretion amounting to an error of law.").

## IV.

Finally, McFadden argues the trial court erred in failing to grant his mistrial motion based on several comments the solicitor made during closing arguments. We disagree.

A solicitor's closing argument must be carefully tailored so it does not appeal to the personal biases of the jurors. Further, the argument may not be calculated to arouse the jurors' passions or prejudices and its content should stay within the record and its reasonable inferences. *State v. Linder*, 276 S.C. 304, 278 S.E. (2d) 335 (1981). The trial court has broad discretion in dealing with the propriety of the solicitor's argument, including the question of whether to grant a defendant's mistrial motion. *Id.; State v. Dawkins*, 297 S.C. 386, 377 S.E. (2d) 298 (1989). Its decision will not be overturned absent an abuse of discretion amounting to an error of law that prejudices the defendant. *Washington*, 315 S.C. 108, 432 S.E. (2d) 448; *Dawkins*, 297 S.C. 386, 377 S.E. (2d) 298. On appeal, the appellate court will view the alleged impropriety of the solicitor's argument in the content of the entire record. *Linder*, 276 S.C. 304, 278 S.E. (2d) 335. The appellant has the burden of proving he or she did not receive a fair trial because of the alleged improper argument. *Id.*

## A.

McFadden's first objection to the closing argument concerned the solicitor's comments about statements Green had made to others, but which were not admitted into evidence. The solicitor argued as follows:

MR. KOLB: . . . . And the first thing she did is she went to Frank Vaughn and knocked on his door and said that nasty thing that came by here to pay his rent earlier came back and messed with me. And [defense counsel] objected to what she said to [Officer] Patsolic. What she said to my victim advocate or Cleveland Pinkney or Doug Brannon was not allowed—
MR. WILDER: Objection.

MR. KOLB: —to come into evidence.
MR. WILDER: Move for a mistrial.
THE COURT: It wasn't allowed, Mr. Wilder. It wasn't allowed. Perfectly permissible for him to say that.

McFadden asserts, based on these statements, the solicitor argued outside the record and implied defense counsel kept evidence from the jury.

The supreme court has noted its disapproval of counsel intimating that opposing counsel is trying to conceal something from the jury by objecting to the introduction of evidence. *Cummings v. Tweed*, 195 S.C. 173, 10 S.E. (2d) 322 (1940). We do not approve of the solicitor's comment. In the context of the entire record and its overwhelming evidence of guilt, however, we conclude the solicitor's comment was harmless error beyond a reasonable doubt. *See State v. Gaskins*, 284 S.C. 105, 326 S.E. (2d) 132 (1985), *overruled on other grounds*, *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991) (the solicitor's comment, during closing argument, that certain evidence was undisputed because of the defendant's failure to testify was harmless error beyond a reasonable doubt in context of the entire record and in light of overwhelming evidence of guilt).

## B.

Next, McFadden objected to the solicitor's comment that McFadden had not given a written statement to the police. The solicitor made the following remarks:

MR. KOLB: . . . . They questioned him. Find out what's he going to say. He started lying. Mr Pinkney told you after it was all over with, the defendant himself told you about some other officer asked him about a certain procedure. Mr. Pinkney told you he wouldn't give a written statement. Mr. Wilder talks about—
MR. WILDER: Your honor, I'd like to have the record reflect another motion at this point.

McFadden also objected to the solicitor's implication that a defense verdict would infer that the jury thought the police officers who testified were lying. The solicitor argued as follows:

MR. KOLB: So, [the defendant is] lying. He's lying about key and crucial matters and those lies, you know, he has—You think that a defendant wants to get up here and call [police officers] liars and put a jury in a position of saying not guilty, you [police officers] are liars. . . .

. . . .

MR. WILDER: I object. A verdict simply speaks to the guilt as to whether a defendant is guilty or not guilty of a particular offense. It doesn't necessarily infer that they are finding anybody liars. I object to that. It's an improper argument.

THE COURT: All right. I agree with you.

McFadden asserts, based on these statements the solicitor commented improperly on McFadden's right to remain silent and pitted witnesses against each other.

Defense counsel, however, had argued that the DNA expert, a SLED officer, lied to the jury about an aspect of the DNA testing,[1] emphasized the fact that the investigating officers wanted the jury to believe that McFadden was lying, and implied that he officers may not be telling the truth because they made no tape recording, video tape, or transcript of their interview with McFadden.[2] In light of these comments, and based on our review of the record as a whole, we conclude the solicitor's arguments concerning McFadden's refusal to give the officers a written statement and the significance of a defense verdict were, if anything, invited responses to defense

---

[1] Defense counsel argued as follows:

Well, let me tell you about a mistake he made while he was on the stand which will show you exactly whose side he's on. No matter what he's going to say, he is going to testify that there is a match. No matter what. . . . And if it hadn't been for the fact that I asked the guy who got on the stand before him in your presence who prepared those little patches you run the test on, I wouldn't have known that he was lying. All he was trying to do is make you believe him no matter what he said. But he lied to you. . . . [T]he solicitor is going to . . . try to get you to do what I call worship at the alter of the D.N.A., you know. That this is the almighty arm of science that cannot be violated in any way and we must take what this men, McClure, who already lied to you once and I caught him—we've got to take what he says for granted.

[2] Defense counsel argued as follows:

These are the notes Cleveland Pinkney took and Lord have mercy if there is not—if anything's more incredible than this. They are interview-

counsel's arguments. Given the ample other evidence of guilt in the record, and based on a review of the record as a whole, we hold the solicitor's comments did not infect McFadden's trial with unfairness to the extent that his conviction was a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed. (2d) 144 (1986); *State v. Hawkins*, 292 S.C. 418, 357 S.E. (2d) 10 (1987), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E (2d) 315 (1991). *See State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364, *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed. (2d) 182 (1990) (upholding the solicitor's closing argument that the jury's imposition of any sentence less than the death penalty would be a "cop-out" because, when reviewed in the context of the entire record, the comment was not a personal attack on the jurors and did not infect the trial with unfairness so as to deny the defendant due process); *see also State v. Singleton*, 284 S.C. 388, 326 S.E (2d) 153, *cert. denied*, 471U.S. 1111, 105 S.Ct. 2346, L.Ed. (2d) 863 (1985), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E (2d) 315 (1991) (holding that because defense quoted from the Sermon on the Mount during his closing argument in seeking mercy for the defendant, "the solicitor committed no error by responding in kind" by referring to the "hanging of undesirables" in the pioneer West).

Affirmed.

ing a man whom they suspect in this thing and they're making no tape-recording, no videotape of what's going on in the room and these are the notes we have that Officer Pinkney says he didn't even write down the things in order as they were taking place, but and these are not just the things he told us but . . . there [is] some information we got from other people that led us to believe he was lying to us. He's lying; he's lying; he's lying.

If it's so important to establish in court today that he was lying where is Marie Hodge taking the notes about what he said, writing it down as a stenographer would so that she can go back and transcribe it and put it in writing. Where is the tape that they had everybody on the tape recorder. You recall his feeble excuse for not making a videotape of it. . . . Why don't they want to know what was taking place on January 2nd in the law enforcement center regarding this crucial testimony to their case to prove that this man was "lying" to them. . . .

. . . .
If there was a lie told to Cleveland Pinkney, why didn't he write down the man lied to me when he was taking the notes.

SHAW and HOWARD, JJ., concur.