537 S.E.2d 273

The STATE, Respondent,

v.

David M. McCLURE, Jr., Appellant.

No. 25193.

Supreme Court of South Carolina.

Heard June 7, 2000.

Decided Sept. 11, 2000.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for respondent.

MOORE, Justice:

This is a death penalty case. Appellant raises a single sentencing phase issue. We reverse and remand for resentencing.

## FACTS

Appellant David McClure murdered his father and his father's girlfriend by stabbing them. At the time of the murders, appellant was eighteen and lived with the victims. In a taped confession, appellant admitted his guilt and alleged Satan had ordered him to kill the victims. The State sought the death penalty. The solicitor rejected appellant's offer to plead guilty. Appellant presented no evidence at the guilt phase and did not testify at either phase. He was convicted of murder and sentenced to death.

## ISSUE

Did the trial court err in permitting the solicitor to refer to appellant's lack of remorse during closing argument in the sentencing phase?

## DISCUSSION

Appellant did not testify at the guilt or sentencing phases of the trial. In the closing argument in the guilt phase, appellant's counsel stated that appellant had tears running down his cheeks when the tape of his statement was played and was "very sorry about what's happened here." Further, counsel

stated, "From the time this thing happened David's been sorry. He's been remorseful."[1] In the opening argument in the sentencing phase, the solicitor referred to appellant's lack of remorse. Appellant objected. The trial judge overruled the objection.

In her closing argument in the sentencing phase, the solicitor then stated:

... [L]et's talk mitigation. Is there any mitigation? Is there anything that says, hey, is he truly sorry? Does he truly want to make it better? You know, those are the things that you are entitled and I want you to consider, 'cause that's part of the job you all have. And you're going to hear, the judge is gonna say, "Consider it, if you want to." What can we tell you about this defendant, about this defendant that will help you? No remorse whatsoever.[2] You heard from the family members, his friends, his associates, the people at the jail, the doctors, the psychologist, that this defendant has no remorse whatsoever. Whatsoever.

No one, no one, could—even his mother—could take this stand, put their hand on the Bible, sit in this chair and say, "He didn't want to do it. He was truly sorry." No one could come up here, put—sit in this chair and tell you all that there is, have been in any way whatsoever, any remorse for the double murders of David McClure, Senior, and Donna Fitzpatrick. None. None.

There has been no remorse ... You know there is no remorse. There's no appropriate "I'm sorry." I didn't— you know "I wish I could take it back." No ...

I'm confident by his actions, by his deeds, by his lack of remorse, by his desire to be as big and bad as he can be, he will do it again ...

---

1. In appellant's closing argument in the sentencing phase, counsel again stated appellant had tears running down his cheeks when the taped confession was being played and that appellant was "so sorry for what has happened."

2. At this point in the argument, appellant's counsel and the trial judge held a bench conference after which the argument resumed. After the argument was completed, the trial judge sent the jury out and stated that appellant had objected timely and then addressed appellant's objection.

Appellant objected on the ground the solicitor had commented on appellant's right to remain silent. Appellant also pointed out that the solicitor had been sitting in the witness chair when she argued that no one had testified about appellant's remorse.

Appellant asked for a curative instruction. The trial judge stated he would instruct the jury that generally "the defendant doesn't have to testify and they can't use that fact against him." The trial judge specifically declined to give a curative instruction because he ruled the comments were appropriate. The trial judge also stated that he thought appellant had "[opened] the door" when appellant had referred to remorse initially.

■■■ The fifth amendment privilege against self-incrimination extends to the penalty phase of a capital case. *State v. Hawkins,* 292 S.C. 418, 357 S.E.2d 10 (1987).[3] A corollary of the right to remain silent is the prohibition against prosecutorial comment upon the failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Hawkins, supra.* This constitutional prohibition, however, does not preclude a prosecutor from making "a *fair* response to a claim made by defendant or his counsel." *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) (emphasis added).

In *Robinson,* defense counsel mentioned several times in his closing argument that the government did not allow the defendant, who did not testify, to explain his side of the story and had unfairly denied him the opportunity to explain his actions. The prosecutor in rebuttal remarked that the defendant "could have taken the stand and explained to you anything he wanted to. The United States of America has given him, throughout, the opportunity to explain." 108 S.Ct. at 867. The Supreme Court held the prosecutor's statements, in light of defense counsel's comments, did not infringe upon the defendant's fifth amendment rights. The Court held that those rights are violated when a prosecutor, on his own initiative, asks the jury to draw an adverse inference from a

---

**3.** The fifth amendment, as applicable to the States through the fourteenth amendment, provides that "No person ... shall be compelled in any criminal case to be a witness against himself. . . ."

defendant's silence or to treat such silence as substantive evidence of guilt. The Court also held no violation of the privilege takes place, however, when the prosecutor's reference to the defendant's opportunity to testify is a *fair* response to a claim by the defense.[4]

■ We believe that the State's comments in this case are a far cry from the restrained rebuttal sanctioned by the Supreme Court in *Robinson* and are not a fair response to the two comments made by defense counsel. Although here defense counsel did invite some comment on the remorse issue, the solicitor could have fairly responded by referring to the lack of evidence showing remorse without specifically commenting on the failure of appellant to take the stand and apologize. If the solicitor had stopped prior to commenting on the lack of an "I'm sorry" or "I wish I could take it back," we might agree with the State that the solicitor was merely responding to appellant's comments about remorse. However, in our opinion, the solicitor's argument went too far.

The State cites *Six v. Delo*, 94 F.3d 469 (8th Cir.1996) as a case "almost directly on point." We disagree. In *Six*, the comments about remorse were prefaced with a reference to the jury's observance of the defendant during the trial. The court held the prosecutor's comments about remorse were remarks on the defendant's general demeanor in the courtroom and not about a failure of the defendant to take the stand and express remorse. In contrast, here the solicitor, while sitting in the witness stand, commented specifically upon the fact that appellant had not stated "I'm sorry" or "I wish I could take it back." Here, the solicitor's comments were not a fair response and cannot be seen as a reasonable response to the defense's argument of remorse. Thus, the trial court erred in overruling appellant's objection.

---

4. Appellant points to the reversible error the court has previously found in *State v. Hawkins*, 292 S.C. 418, 357 S.E.2d 10, 13 (1987) ("remorse is not an appropriate matter for consideration by the jury when a defendant pleads not guilty and does not testify") and *State v. Sloan*, 278 S.C. 435, 298 S.E.2d 92 (1982) (Court found egregious error in State's closing argument during sentencing phase when State argued: "Has anyone said to you he's sorry, sorry for what he did? ... What have you been told up until you found him guilty. He has pled not guilty ... Is that someone who wants to be rehabilitated?"). However, these cases did not address the "invited response" argument now before us.

■ Our review of the closing argument is based upon whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *State v. Davis,* 309 S.C. 326, 422 S.E.2d 133, 146 (1992); *State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990).

■ We note the evaluation of the consequences of an error in the sentencing phase of a capital case are more difficult because of the discretion that is given to the sentencing jury. A capital jury can recommend a life sentence for any reason or no reason at all. *State v. Atkins,* 303 S.C. 214, 399 S.E.2d 760 (1990); *State v. Tyner,* 273 S.C. 646, 258 S.E.2d 559 (1979). *State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (1998).

■ In our opinion, in this capital case, the solicitor's comments are reversible error. The solicitor repeatedly emphasized the fact that appellant had not shown remorse and had not testified. This focused the jury's attention on an improper consideration—on whether appellant had to testify and express remorse to avoid the death penalty. Further, as the trial judge stated, the issue of appellant's remorse in this case "bears on the question of [appellant's] future dangerousness." Thus, we find the solicitor's comments so infected the sentencing phase of appellant's trial with unfairness as to make the resulting death sentence a denial of due process. Accordingly, appellant's sentence is reversed and the case is remanded for resentencing.

REVERSED AND REMANDED.

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.