924

UNITED STATES of America

v.

Mark Andrew TRUSHEIM.

Crim. No. 89–00190–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 7, 1989.

Janet Reincke, Asst. U.S. Atty., Alexandria, Va., for U.S.

Robert L. Ellis, Fairfax, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is but the latest in the seemingly endless progression of Washington National Airport ("Airport") search and seizure cases.[1] It presents the question whether the Constitution compels the suppression of the fruits of a warrantless, nonconsensual search conducted while the defendant was actually in custody, but not formally under arrest, and after defendant had been told that he was not under arrest and did not need a lawyer. In these circumstances, for the reasons stated here, suppression is not constitutionally compelled.

### Facts[2]

On the evening of May 9, 1989, a Fairfax County police officer, on special assign-

1. For another case in this genre, *see United States v. Melo,* 701 F.Supp. 1254 (E.D.Va.1988).

2. DEA Special Agent Dunn, one of the three agents involved, was the only witness to testify at the suppression hearing. The Court, pursuant to Rule 12, Fed.R.Crim.P., stated its factual

ment to the DEA Mass Transportation Narcotics Interdiction Task Force, received a call from a reliable informant who was, at the time, located at the Pan American Airways shuttle gate at La Guardia Airport in New York. This informant told the Fairfax County officer that a certain described individual was shortly to board a Pan American shuttle flight bound for the Airport, carrying about one kilogram of cocaine secreted in a package around his waistline. Acting on this information, three DEA special agents, including the Fairfax County officer, positioned themselves at the Pan American shuttle arrival gate at the Airport so they could monitor arriving passengers. Circa 11:00 p.m. a flight arrived and defendant was one of the exiting passengers. As defendant walked hurriedly through the terminal, the agents recognized him as the person described by the informant. At this point two of the agents approached defendant, identified themselves as DEA agents and asked defendant if he would be willing to answer a few questions. Defendant responded that he did not mind doing so. Thereafter, defendant was asked if he had just deplaned from a flight and he said that he had. When asked if he could show them his ticket, defendant could not find one, but produced a boarding pass. In response to a request for identification, defendant looked through his wallet and after apparently not finding what he was looking for, he produced a passport in the name of Mark Andrew Trusheim. The agent returned the passport and boarding pass to defendant and asked whether defendant lived in New York or Washington. Defendant explained that he lived in Washington and visited New York on occasion where he stayed for several weeks, though on this occasion he stayed only a few days. When asked where he stayed in New York, defendant said Queens, but could furnish no address or phone number. At this point, one of the agents explained the mission of the Task Force and asked defendant if he

was carrying any narcotics. Defendant said he was not. The agent then asked defendant if he would consent to a search of his luggage, consisting then of a suit bag and brief case. Defendant consented and handed the bags to the agent. The search uncovered no narcotics. Next, the agent asked defendant if he was carrying any drugs on his person. On receiving a negative answer, the agent asked if defendant would consent to a pat down. In response, defendant began to go through his coat pockets. The agent then said that he merely wanted to do a pat down of his body. Defendant, who had been facing the officer, turned around and raised his arms in a gesture unambiguously conveying his consent to the pat down and also serving to facilitate it. The agent, without defendant's objection, started the pat down on defendant's upper body. When he reached the abdominal area, he felt a rectangular shaped package approximately $8'' \times 4'' \times 2''$ taped partly above and partly below defendant's waistline. The location and size of this package were consistent with the information supplied by the informant and with the agent's experience and training concerning how and where drug couriers typically secrete narcotics on their persons.[3] When asked what the package was, defendant did not respond.

At this point, the agents believed that defendant was carrying illicit drugs in the package affixed to his abdomen. Accordingly, the agents advised defendant that they were taking him to the Airport police station to ascertain what the package contained. On the way, defendant asked if he should retain a lawyer. The agent responded by saying not at this time because defendant was not under arrest, but only "investigative detention." At the Airport police station, defendant was directed to remove his jacket and pull up his shirt. Defendant did so, revealing a large rectangular package taped to his body. The

findings and legal conclusions in open court and noted that this amplifying Memorandum would follow.

**3.** The agent also testified that defendant's outer jacket was noticeably oversized. The invited inference is that the outer jacket's size was intended to aid in concealing the secreted package.

package was removed and the contents were field tested with the results confirming the agents' belief that the secreted substance was cocaine. Defendant was then arrested and advised of his rights.

### Analysis

■ Defendant focused first on his initial encounter with the agents, arguing that it and the pat down amounted to an illegal arrest and search. The facts derail this argument. The encounter and pat down were entirely consensual, neither implicating Fourth Amendment strictures. Absent coercion or physical force, law enforcement officials do not run afoul of the constitution by approaching a citizen in a public place, identifying themselves as DEA agents, asking questions and requesting permission to conduct a pat down search. *See INS v. Delgado,* 466 U.S. 210, 218, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984); *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall,* 446 U.S. 544, 557–59, 100 S.Ct. 1870, 1878–79, 64 L.Ed.2d 497 (1980) (majority portion); *United States v. Lehmann,* 798 F.2d 692, 694 (4th Cir.1986); *United States v. Melo,* 701 F.Supp. 1254, 1258 (E.D.Va.1988). No physical force or coercion were used in this encounter and pat down search. Defendant could have refused to talk to the agents and walked away; he was free to do so until the agent found the package. Under these circumstances, the Fourth Amendment has no application. *Lehmann,* 798 F.2d at 694.

■ Encounters between citizens and law enforcement officers cease to be consensual when circumstances change to warrant a reasonable person believing that he or she is not free to leave. *Royer,* 460 U.S. at 497, 103 S.Ct. at 1323; *Mendenhall,* 446 U.S. at 553–54, 100 S.Ct. at 1876–77. In the instant case, such a change in circumstances occurred when the pat down search disclosed the package. From this point on, a reasonable person would not have felt free to leave and in fact, defendant was not free to leave; he was undeniably in custody and remained in custody during the trip to the police station and thereafter, including the nonconsensual search that disclosed the cocaine. That search, the proper focus of defendant's suppression motion, is valid only if reasonable in scope and time as incident to a lawful arrest. *See United States v. McEachern,* 675 F.2d 618, 622 (4th Cir.1982); *United States v. Chatman,* 573 F.2d 565, 567 (9th Cir.1977). Since defendant was not formally arrested until after the search, the threshold question is whether the warrantless search exception for a search incident to an arrest is applicable where, as here, the defendant was not formally under arrest at the time. It is. The Agents here had ample probable cause to arrest defendant as soon as the pat down disclosed the package.[4] That they waited to do so until after the police station search "does not vitiate the presence of sufficient probable cause to justify an arrest earlier than the officers considered appropriate in the circumstances." *United States v. Morgan,* 799 F.2d 467, 470 (9th Cir.1986); *see also United States v. Hernandez,* 825 F.2d 846, 849 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988) (warrantless search incident to arrest is permissible prior to formal arrest, provided probable cause existed at the time); *Chatman,* 573 F.2d at 567 (same). In short, where, as here, probable cause exists at the time of the search,

---

**4.** The totality of circumstances facing these experienced and trained agents plainly demonstrated a probability of criminal activity by defendant. *See Melo,* 701 F.Supp. at 1258–59, nn. 11 and 12; *see also Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (adopting "totality-of-the circumstances" test for determining whether an informant's tip sufficiency establishes probable cause). Thus the agents had information from a reliable informant that a person meeting defendant's description and carrying approximate-ly one kilogram of cocaine on his person would be on the Pan American shuttle from New York, a known source city. The agents also knew from their training and experience that drug couriers sometimes carried their drugs in packages affixed to their abdomens, which is precisely where they felt a package on defendant in the consensual pat down search. These facts constituted adequate, if not abundant, probable cause to arrest defendant immediately following the pat down search.

that search may be analyzed as incident to a lawful arrest even if it occurs before the formal arrest. *See also United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). To pass muster, such a search must be substantially contemporaneous with the arrest [5] and reasonable in scope.[6] This search plainly met both requirements. It occurred within a short time and distance of the pat down search and defendant's *de facto* arrest. Its scope was reasonable limited to the suspected package. In sum, the agents' search of defendant at the police station is valid under the Fourth Amendment as reasonable in scope and time and incident to a lawful arrest.[7]

An appropriate order will issue.

---

5. *See Shipley v. California,* 395 U.S. 818, 819, 89 S.Ct. 2053, 2054, 23 L.Ed.2d 732 (1969) (citing *Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964)); *see also McEachern,* 675 F.2d at 622 (search incident to arrest may be conducted "not only at the arrest site but also after the arrestee is brought to a place of detention").

6. *See United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973) (full search of arrestee's person is permissible incident to lawful arrest); *United States v. McEachern,* 675 F.2d at 622 (search of objects found on arrestee's person permissible); *Chatman,* 573 F.2d at 567 ("A search of the defen-

dant's person … is clearly within the scope of such a search incident to a valid arrest.")

7. The agent's statement to defendant that he did not yet need a lawyer does not change this result. Because the voluntariness of the search is not at issue here, the extent to which the agent's statement may have misled defendant is irrelevant to the court's ruling. A different result would obtain had the object of the suppression been statements made by defendant on his way to the Airport police station. *See, e.g., United States v. Morgan,* 799 F.2d 467, 470 (9th Cir.1986) (statements made by defendant after search incident to arrest but before *Miranda* warnings are not admissible).