2252

The STATE, Respondent v. David MOULTRIE, Appellant.

(451 S.E. (2d) 34)

Court of Appeals

*Assistant Appellate Defender Tara Dawn Shurling &
Leslie M. Coggiola,* both of *S.C. Office of Appellate Defense,*
Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty.
Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M.
Coombs, Jr., Asst. Atty. Gen. Norman Mark Rapoport,* Co-
lumbia; and *Sol. David P. Schwacke,* N. Charleston, *for re-
spondent.*

Heard Oct. 5, 1994.

Decided Oct. 31, 1994.

GOOLSBY, Judge:

David Moultrie appeals his conviction for possession of mar-
ijuana with intent to distribute. He claims the trial court
should have excluded evidence that he alleges the arresting of-
ficer improperly seized during a search of his person and testi-
mony concerning his prior drug-related activities. We affirm.

On June 15, 1991, Ricky Dean Fabre gave Deputies Joseph
Boykin and Ronald Maugans a detailed account of drug trans-

actions involving cocaine, crack cocaine, and marijuana that Moultrie regularly conducted in front of his house since 1989. Fabre acquired the information that he gave to the officers from personal experience. Fabre told the deputies Moultrie kept drugs in a brown paper bag either under his car in front of his house or in the woods adjacent to his house near where he parked his car.

On June 17, 1991, at the dark hour of 10:00 p.m., the two deputies pulled up on the road in front of Moultrie's house. Deputy Boykin observed a crowd of approximately eight people around a car parked in front of the house. He recognized Moultrie, who was standing in front of the car, from prior encounters. As Deputy Boykin approached the crowd, lighting his way with a small flashlight, he saw on the ground, approximately one to two feet from Moultrie, a plastic-wrapped package of green plant material that appeared to be, and later proved to be, marijuana.

The deputies, suspecting criminal activity, conducted a "pat-down" weapons search of each individual. Deputy Boykin's search of Moultrie produced a pocket knife and a bulging wallet that contained a large sum of cash.

Deputy Boykin also discovered cocaine, crack cocaine, and more marijuana in a brown paper bag at the edge of the woods, approximately ten to fifteen feet from Moultrie's car.

Deputy Boykin then formally arrested Moultrie.

The grand jury later indicted Moultrie for possession of cocaine with intent to distribute, possession of crack cocaine with intent to distribute, and possession of marijuana with intent to distribute. The petit jury acquitted Moultrie on the cocaine and crack cocaine charges, but convicted him on the marijuana charge.

## I.

Moultrie argues the trial court should have excluded the evidence of the cash found in his wallet because the search exceeded the scope of a *Terry* pat-down.[1]

---

[1] *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. (2d) 889 (1968) (when an officer is justified in believing that the suspect whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a protective pat-down search of the suspect's outer clothing to determine if the suspect is carrying a weapon).

We need not decide this question.

The fact that an arresting officer improperly based a ■ search of an individual on a *Terry*-stop rationale does not prevent the State from otherwise justifying the search by proving probable cause to make a warrantless arrest of the individual existed prior to the search. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed. (2d) 229 (1983) ("[T]he fact that the officers did not believe there was probable cause and proceeded on a consensual *Terry*-stop rationale would not foreclose the State from justifying [the defendant's] custody by proving probable cause. . . ."); *see generally United States v. Hernandez,* 825 F. (2d) 846 (5th Cir. 1987), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed. (2d) 996 (1988) (a warrantless pat-down search of the defendant's person that produced a counterfeit bill was outside the scope of a permissible *Terry* search but was nonetheless lawful where, although the actual arrest occurred after the search, probable cause existed before the search).

But, before determining whether Deputy Boykin had ■ probable cause to arrest Moultrie, we ought to decide whether the challenged search, which occurred before Moultrie's arrest, qualifies as a search incident to that arrest.

A warrantless search[2] that precedes a formal arrest is ■■ nonetheless valid if the arrest quickly follows. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed. (2d) 633 (1980); *United States v. Miller,* 925 F. (2d) 695 (4th Cir. ) (Powell, J., Associate Justice (Retired), United States Supreme Court), *cert. denied,* — U.S. —, 112 S.Ct. 111, 116 L.Ed. (2d) 80 (1991); *see also United States v. Chatman,* 573 F. (2d) 565 (9th Cir. 1977) ("Once probable cause exists for a warrantless arrest it is immaterial that a warrantless search precedes the arrest"). The fruits of such a search, however, cannot be used to justify the arrest. *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. (2d) 917 (1968). Because Deputy Boykin arrested Moultrie almost immediately after Deputy Boykin performed the challenged search, the requirement that the search be closely related in time is satisfied and the

---

[2] *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed. (2d) 685 (1969) ("[A] warrantless search is permissible incident to a lawful arrest because of legitimate concerns for the safety of the officer and to prevent the destruction of evidence.").

search thus qualifies as being incident to Moultrie's arrest. *E.g., Creasy v. Leake,* 422 F. (2d) 69 (4th Cir. 1970).

Turning to the question of probable cause, probable cause for a warrantless arrest generally exists "where the facts and circumstances within the arresting officer's knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested." *Miller,* 925 F. (2d) at 698; *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In assessing whether an officer has probable cause, the totality of the circumstances surrounding the information at the officer's disposal must be considered. *Id., citing Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. (2d) 527 (1983).[3]

The Supreme Court has upheld a warrantless arrest based on an informant's tip where the arresting officers conducted no independent investigation and corroboration consisted of nothing more than observing the predictions supplied by the tip. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. (2d) 327 (1959) (overruled on other grounds by *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed. (2d) 538 (1977)); *United States v. Porter,* 738 F. (2d) 622 (4th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed. (2d) 323 (1984); *see also Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. (2d) 527 (1983) (an officer can rely on an informant's tip if the totality of the circumstances appears to verify the accuracy of the information).

Here, Fabre's detailed firsthand information about Moultrie's mode of operation during his drug transactions was corroborated when Deputy Boykin arrived on the scene to find a crowd of people surrounding Moultrie, a package of marijuana at Moultrie's feet, and a paper bag filled with cocaine, crack

---

[3] Probable cause analysis "includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Pasquarille,* 20 F. (3d) 682, 686 (6th Cir. 1994); *see id.* (an informant's tip provided probable cause where the informant identified herself and had personally observed the attempted sale of drugs) (citations omitted); *see also United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed. (2d) 621 (1981) ("evidence . . . must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."); *United States v. Thornton,* 733 F. (2d) 121, 127 (D.C. Cir. 1984) ("[P]robable cause to search exists when circumstances known to a police officer are such as to warrant a person of reasonable caution in the belief that a search would reveal incriminating evidence.") (citations omitted).

cocaine, and marijuana at the edge of the woods, exactly where Fabre had told the deputies Moultrie stored his inventory of drugs.[4] These facts, when viewed under the totality of the circumstances, were sufficient for a reasonable person to believe that Moultrie had been, or was currently, conducting drug transactions in front of his house.

Without considering the evidence of the cash found in Moultrie's wallet, we hold Deputy Boykin had probable cause to arrest Moultrie and perform a search incident to that arrest. The cash found in Moultrie's wallet was therefore admissible as the fruit of a valid search incident to arrest. *Accord United States v. Morgan,* 799 F. (2d) 467 (9th Cir. 1986) (a warrantless search of the suspect's person that revealed a large sum of money was held lawful as a search incident to an arrest, even though the officer told the suspect he was not under arrest at the time of the search, because the officer had probable cause before he removed the money from the suspect's pocket); *United States v. Trusheim,* 716 F. Supp. 924 (E.D. Va. 1989) (a warrantless search of the defendant's person that produced illegal drugs, prior to his arrest, was supported by probable cause and was upheld as a search incident to arrest, even though the officers told the defendant, at the time of the search, that he was not under arrest, but only "investigative detention").

## II.

Moultrie also argues the trial court committed reversible error in denying his pretrial motion *in limine* to exclude evidence of prior bad acts and in denying his motions for a mistrial based on the introduction of evidence of prior bad acts. We disagree.

## A.

Moultrie first challenged, in a pretrial motion *in limine* made before Judge Hayes, the admission of "any evidence of prior crimes which did not result in any con-

---

[4] Although Moultrie argues Fabre's information is less reliable because he gave it in an effort to secure a more lenient sentence on pending federal drug charges and to avoid state drug charges, our Fourth Circuit Court of Appeals has held "[t]he informant's interest in obtaining leniency created a strong motive to supply accurate information. The informant hoped that by giving reliable information she would receive a lenient sentence. If she provided false information she had nothing to gain and could have risked an additional charge for falsification." Miller, 925 F. (2d) at 699.

viction." In arguing the motion, Moultrie focused entirely on Fabre's testimony concerning Moultrie's involvement since 1987 in the drug trade. Judge Hayes ruled the testimony would be admissible at trial to prove a common scheme.

To preserve this issue for appeal, Moultrie was not only required to raise it once again before the trial judge, Judge Howell, but also to obtain a ruling on the issue from the trial judge. *E.g., State v. Schumpert,* — S.C. —, 435 S.E. (2d) 859 (1993).

Before the State presented its case, Moultrie renewed his motion *in limine,* before Judge Howell, to exclude evidence of prior bad acts. Moultrie did not, however, obtain a ruling on this issue; therefore, we need not address this issue.

Even assuming Moultrie preserved this issue for appeal, the trial court did not err in admitting the evidence of Moultrie's prior bad acts.

Generally, evidence that a defendant has committed other unrelated crimes or bad acts is inadmissible to prove the defendant's propensity to commit the crime with which he is charged. *Mitchell v. State,* 298 S.C. 186, 379 S.E. (2d) 123 (1989). Clear and convincing evidence of prior crimes or bad acts that is logically relevant is, however, admissible to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan that embraces several previous crimes so closely related to each other that proof of one tends to establish the other, or (5) identity, if its probative value outweighs its prejudicial effect. *State v. Bell,* 302 S.C. 18, 393 S.E. (2d) 364, *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L. Ed. (2d) 182 (1990); *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

First, we dispose of the relevancy issue, holding the challenged testimony was clearly relevant to the question of whether Moultrie possessed drugs with the intent to distribute them on the night of his arrest. *See State v. Alexander,* 303 S.C. 377 401 S.E. (2d) 146 (1991) (evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears).

Next, in determining the admissibility of evidence of prior crimes or bad acts to prove a common scheme or plan, "[t]he question is whether the particular item of evidence tends to show the existence, the nature or content of the plan. Much of

the showing is evidence of the conduct of the defendant and the specific question becomes whether the particular conduct circumstantially tends to prove the design or plan." *Bell*, 302 S.C. at 28, 393 S.E. (2d) at 370 (citing *State v. Anderson*, 253 S.C. 168, 181-82, 169 S.E. (2d) 706, 712, *cert. denied*, 396 U.S. 948, 90 S.Ct. 386, 24 L.Ed. (2d) 253 (1969)).

Fabre's testimony relating the specifics of Moultrie's mode of operation when conducting prior drug deals bore an extraordinary similarity to the evidence Deputy Boykin discovered on the night of Moultrie's arrest and tended to show the nature and content of Moultrie's previous drug dealing. This testimony was, therefore, admissible to prove the existence and nature of Moultrie's drug trafficking scheme and was probative[5] of Moultrie's conduct with respect to the crime for which he was on trial.

Further, we hold the challenged testimony could have been admitted as evidence of Moultrie's intent. *See State v. Gore*, 299 S.C. 368, 384 S.E. (2d) 750 (1989) (where the defendant had been charged with constructive possession of cocaine found in a trailer, evidence obtained from a confidential informant that the defendant sold cocaine from the trailer on two prior occasions was held admissible to establish the element of intent on the charge of possession of cocaine with intent to distribute).

### B.

Moultrie moved for a mistrial twice during Fabre's testimony, testimony he now says prejudiced him. He based his first mistrial motion on Fabre's testimony that he knew Moultrie had "been busted two or three times" before; and he based his second mistrial motion on Fabre's testimony that he had seen police searching around Moultrie's property before, that Moultrie was a "bootlegger," and that he knew Moultrie had been arrested and released three times.

Moultrie, however, made no contemporaneous objection to any of these statements.

Our courts have held a "failure to contemporaneously ob-

---

[5] The challenged testimony was probative of a common scheme and this probative value outweighed any prejudicial effect the testimony might have had on the jury's decision; further, the record is laden with other evidence of Moultrie's guilt. *See infra* pt. (II)(C).

ject" to the introduction of evidence claimed to be prejudicial "cannot be later bootstrapped by a motion for a mistrial." *State v. Lynn*, 277 S.C. 222, 226, 284 S.E. (2d) 786, 789 (1981); *State v. Wilkins*, — S.C. —, 425 S.E. (2d) 68 (Ct. App. 1992). Because Moultrie did not object to the introduction of any of Fabre's testimony at the time the State offered it on the ground that the testimony improperly referred to Moultrie's prior bad acts, Moultrie could not properly move for a mistrial based on the admission of that testimony.[6]

### C.

Moultrie moved a third time for a mistrial after Deputy ■ Boykin's testimony that he knew Moultrie "by sight and name." Moultrie argues the testimony portrays Moultrie as a person who had been the subject of police investigation in the past.

This time, Moultrie made a contemporaneous objection to the offending testimony; however, he did not state any ground for this objection. He is, therefore, now precluded from challenging the trial judge's admission of this testimony. *State v. Meyers*, 262 S.C. 222, 203 S.E. (2d) 678 (1974); *State v. White*, — S.C. —, 428 S.E. (2d) 740 (Ct. App. 1993).

Even assuming Moultrie's contemporaneous objection ■ provided a proper basis for a mistrial motion, the challenged testimony was still admissible because it did not prejudice Moultrie. A trial court error must sufficiently prejudice the defendant in order to require reversal. *State v. Bernotas*, 277 S.C. 106, 283 S.E. (2d) 580 (1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed. (2d) 134 (1982).

As we mentioned, Fabre testified he knew Moultrie had been arrested three times before. Moultrie directed no objection to this testimony, testimony that also portrays Moultrie as a person who had been the subject of police investigation in the past.

Other evidence far more damaging to Moultrie than Deputy Boykin's casual statement that he knew Moultrie "by sight and name" haunts the record.

In addition to Fabre's other uncontested testimony that

---

[6] Moultrie's only objection to *any* of Fabre's testimony was based on the ground of surprise. Because he does not argue this ground in his brief, it is deemed abandoned. *State v. Givens*, 267 S.C. 47, 225 S.E. (2d) 867 (1976).

Moultrie was a drug dealer, another witness, Marcus Grant, testified, without objection, he and Moultrie sold drugs on a regular basis.

Further, the jury had before it the cocaine, crack cocaine, and marijuana Deputy Boykin found near Moultrie, precisely where the informant had predicted the illegal drugs would be found.

We therefore find Deputy Boykin's comments were not prejudicial because there was much other evidence of guilt. *See State v. Rochester*, 301 S.C. 196, 391 S.E. (2d) 244 (1990) (the admission of improper evidence is harmless where the evidence is merely cumulative); *see also Bernotas*, 277 S.C. at 108, 283 S.E. (2d) at 581 (the challenged evidence did not prejudice the appellant because it was "merely cumulative" to "independent and overwhelming evidence of guilt."); *State v. Blackburn*, 271 S.C. 324, 247 S.E. (2d) 334 (1978) (the improper admission of a witness's statement implicating the appellant was harmless because it was cumulative to testimony from other State witnesses).

Affirmed.

CURETON and CONNOR, JJ., concur.