485 S.E.2d 913

**The STATE, Respondent,**

v.

**Evette PIERCE, Appellant.**

**No. 24613.**

Supreme Court of South Carolina.

Heard Oct. 31, 1995.

Decided May 12, 1997.

Rehearing Denied June 16, 1997.

Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr., and Staff Attorney G. Thomas Chase, Columbia, and Solicitor, Ralph J. Wilson, Conway, for respondent.

MOORE, Justice.

Appellant was convicted of homicide by child abuse under S.C. Code Ann. § 16–3–85(A)(1) (Supp.1995). We reverse and remand.

## FACTS

The victim was appellant's two-year-old son, Kindal.[1] Appellant testified Kindal hit his head on the corner of a table on the night he died. She testified he seemed to be uninjured, so she gave him a bath and put him to bed. He was later found dead. Dr. Nichols, a forensic pathologist testified Kindal died from a head injury.

---

1. Appellant's husband was also convicted in connection with Kindal's death.

178

## ISSUE

Did the trial court err in admitting testimony regarding prior injuries and appellant's treatment of Kindal?

## DISCUSSION

Two employees of Access Medical Hospital (Access) testified Kindal had been treated previously for a "split lip" and a swollen eye. The testimony was offered to prove a common scheme or plan under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).[2] The trial court admitted the testimony because it tended to establish a pattern of child abuse. Appellant contends the admission of this testimony was error because there was no clear and convincing evidence appellant inflicted these injuries. We agree.

■ The testimony regarding Kindal's previous injuries is inadmissible absent a conviction or clear and convincing proof that appellant inflicted the injuries. *State v. Smith*, 300 S.C. 216, 387 S.E.2d 245 (1989). The State failed to offer any proof that appellant inflicted these injuries. Thus, this testimony is inadmissible under *Lyle* and the trial court erred in admitting it.

An employee of Access also testified about appellant's rough treatment of Kindal at Access one year prior to his death. The employee testified appellant jerked Kindal off the counter by his arm and put him into his stroller. The trial court held the testimony admissible under the common scheme or plan exception of *Lyle*, supra. Appellant contends this was error. We agree.

■ This prior act towards Kindal is not of such a close similarity to homicide by child abuse so as to overrule its prejudicial effect. In the case of the common scheme or plan exception under Lyle, a close degree of similarity or connection between the prior bad act and the crime is necessary.

---

2. Contrary to the dissent's assertion, the testimony of the Access personnel regarding the prior lip and eye injuries was not offered to prove the "battered child syndrome." It was offered to prove a common scheme or plan under *Lyle*, supra, and the trial court admitted the testimony because it tended to establish a pattern of child abuse. Whether this evidence would have been admissible to establish the battered child syndrome is not before us.

*State v. Parker,* 315 S.C. 230, 433 S.E.2d 831 (1993). See also *State v. Douglas,* 302 S.C. 508, 397 S.E.2d 98 (1990). The connection between the prior bad act and the crime must be more than just a general similarity. *State v. Stokes,* 279 S.C. 191, 304 S.E.2d 814 (1983). The prior acts about which the Access personnel testify are not sufficiently similar to the acts which caused Kindal's death. *State v. Rivers,* 273 S.C. 75, 254 S.E.2d 299 (1979).[3] Therefore, the trial judge erred in admitting this evidence.

Based on the foregoing, we reverse and remand.

**REVERSED AND REMANDED.**

FINNEY, C.J., and WALLER, J., concur.

BURNETT and TOAL, JJ., dissent in separate opinion.

BURNETT, Justice, dissenting:

I respectfully dissent. Appellant was charged in connection with the death of her two-year-old son, Kindal.[1] On July 31, 1992, local paramedics, responding to a 911 call from Appellant's home, found Kindal dead on the couch in the home. Kindal was "very cold", and rigor mortis had set in.

Dr. Nichols, a forensic pathologist, testified regarding an autopsy he had performed on Kindal's body. Using photographs, Dr. Nichols explained his autopsy findings to the jury. He found a large abrasion on the center of Kindal's forehead, matted eyelashes, a lacerated lower lip which was freely bleeding, as well as multiple scars, scratches, and bruises all over Kindal's body. He found a "gouge mark" on Kindal's scrotum indicated by a "circular scar there measuring [0.25 inches]...." He also found hemorrhaging in Kindal's eyes and brain. Dr. Nichols concluded that Kindal died as a result of a head injury and that Kindal's head wound was not the result of an accident. He further testified that Kindal's injuries were symptomatic of the "battered child syndrome",

---

3. Furthermore, DSS conducted an investigation prompted by this incident and found the complaint to be unwarranted.

1. Appellant's husband was also charged, and he has separately appealed.

suggesting that Kindal had been "repeatedly abused over and over and over again."

Appellant testified that Kindal was an accident-prone child.[2] According to Appellant, on the night of Kindal's death, Kindal had "dumped a plate [of food] upside down, and I got the belt and popped him on the leg, and he went to run, and he bumped his head [on the corner of the table]." Appellant said Kindal seemed alright, so she gave him a bath and put him to bed. He was later found dead.

## DISCUSSION

Two employees of Access Medical Hospital testified about an incident they witnessed in June of 1991. Appellant had brought Kindal to Access for treatment, and was angry that Access wanted her to pay for the visit. One employee testified:

> The child [Kindal] was sitting on the counter. She [Appellant] took him by the arm like this, jerked him off the counter, and I mean jerk in a nice way (sic), jerked him off the counter, pulled him across the floor, I would say, from here to the wall ... where there was a stroller sitting, and she took him by the arm, and instead of picking the child up and placing him in the stroller, she jerked him up by the arm, tossed him into the stroller, and he landed crooked, so again she jerks him back up and places him by the one arm into the stroller and then starts to leave.

Appellant argues that the judge erred in admitting testimony about this incident because it was too remote in time, was unconnected to the present charge, and was unduly prejudicial. I disagree.

> Generally, evidence that a defendant has committed other unrelated crimes or bad acts is inadmissible to prove the defendant's propensity to commit the crime with which he is charged. Clear and convincing evidence of prior crimes or bad acts that is logically relevant is, however, admissible to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan that embraces

---

**2.** Appellant testified that Kindal would "[fall] down, scratching hisself [sic], bumping his head, bumping his head, falling down, spitting, throwing the food upside down. He wouldn't eat."

several previous crimes so closely related to each other that proof of one tends to establish the other, or (5) identity, if its probative value outweighs its prejudicial effect.

*State v. Moultrie,* 316 S.C. 547, 554, 451 S.E.2d 34, 39 (Ct.App.1994)(citations omitted) (citing *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923)). Regarding the "common scheme or plan" element, in *State v. Parker,* 315 S.C. 230, 233, 433 S.E.2d 831, 832 (1993), this Court reaffirmed the "enhancement of the probative value test."

> This test requires the trial court to balance the probative value of the evidence against its prejudicial effect, and where the evidence is of such a close similarity to the charged offense that the previous act enhances the probative value of the evidence so as to "overrule the prejudicial effect", it is admissible.

We have held that the "common scheme or plan" element of *Lyle* "is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show continued illicit intercourse *between the same parties.*" *State v. Whitener,* 228 S.C. 244, 265, 89 S.E.2d 701, 711 (1955) (emphasis added). See also *State v. McClellan,* 283 S.C. 389, 323 S.E.2d 772 (1984). In *McClellan,* the defendant was charged with raping his fifteen-year-old daughter. The lower court allowed the daughter to testify that the defendant had attacked her on previous occasions, even though the defendant was not charged for the previous attacks. This Court held that the "prosecutrix's testimony regarding prior attacks was admissible under [the *Lyle* "common scheme"] exception to show the continued illicit intercourse forced upon her by Appellant." *McClellan,* 283 S.C. at 392, 323 S.E.2d at 774.

I see no reason to restrict the logic of *Whitener* and McClellan to sex abuse cases. Sex abuse and child abuse cases are highly similar in their methods of proof, because both types of cases generally involve the same perpetrator committing abuse against the same helpless victim. And where the perpetrator is the parent or guardian and has exclusive custody of and control over the victim, proving the abuse becomes extremely difficult. As one commentator has written,

Child abuse is maddeningly difficult to prove. Maltreatment occurs in secret, with the child usually the only eyewitness. Unfortunately, many victims are too young to testify. While most children three years old and older possess the psychological capacity to testify, a significant number do not take the stand. Of those who do, some are ineffective witnesses.... The dearth of evidence creates a chasm separating the stark reality of child abuse from its proof.

John E.B. Myers, Uncharged Misconduct Evidence in Child Abuse Litigation, 1988 Utah L.Rev. 479, 479—480 (1988).

*Whitener* and *McClellan* recognize the difficulties associated with proving child sex abuse. Given this "dearth of evidence", evidence which shows a pattern of abuse becomes even more probative than it might otherwise be. In *McClellan*, we allowed testimony of prior sex abuse by the same perpetrator against the same victim because it showed "*continued illicit intercourse*".[3] 283 S.C. at 392, 323 S.E.2d at 774 (emphasis added). Continued illicit intercourse is analogous to a pattern of child abuse, and the only difference between this case and *McClellan* is that this case involved child abuse, not sex abuse. The distinction is illusory, however. Thus, I construe *Whitener* and *McClellan* to embrace not only sex abuse cases, but also child abuse cases. *See State v. Everette*, 532 So.2d 1124, 1125 (Fla.App.1988) ("We believe in a child abuse case that reference to prior injuries to the child should be permitted,

---

**3.** The language of the "Homicide by Child Abuse" statute, § 16–3–85, supports the theory that proof of child abuse often depends on evidence of repeated abuse. Section 16–3–85 provides, in pertinent part:

(A) A person is guilty of homicide by child abuse who:

(1) causes the death of a child under the age of eleven while committing child abuse or neglect *as defined in Section 20–7–490* and the death occurs under circumstances manifesting an extreme indifference to human life....

(Emphasis added.)

S.C.Code Ann. § 20–7–490(B) (Supp.1995) defines "Abused or neglected child" to mean "a child whose death results from or whose physical or mental health or welfare is harmed or threatened with harm ... *by the acts or omissions* of his parent ...." (Emphasis added.) Thus, the statute itself contemplates that child abuse is proven by evidence of multiple acts which show a systematic pattern of abuse. Moreover, § 16–3–85 and 20–7–490 are harmonious with the battered child syndrome recognized by this Court in *State v. Lopez*, 306 S.C. 362, 412 S.E.2d 390 (1991).

particularly when compared to the appropriateness of similar evidence in sexual child abuse cases.") During the hospital incident, appellant violently jerked Kindal by the arm and then threw him into the stroller. The issue at trial was whether appellant's violent act caused Kindal to sustain a head wound which resulted in his death. The State had the burden of proving appellant's violent act caused Kindal's death. Because the hospital incident between Appellant and Kindal is probative of a pattern of abuse by Appellant against Kindal, it is admissible under the "common scheme or plan" exception to *Lyle*.

This evidence is also admissible because it negates Appellant's claim that the death was caused by an accident. See *State v. Moultrie*, supra.[4]

Over Appellant's objection, the trial judge allowed the testimony of Access Medical personnel that Kindal had been treated previously at Access Medical for lip and eye injuries. One employee testified that in June of 1992, Kindal had been admitted to Access Medical for a "split lip". A month later, Kindal was brought in for an eye that was "swollen shut" with the upper and lower eyelid gone. Appellant argues that there was no clear and convincing evidence that Appellant caused these injuries, and that therefore it was error for the trial court to admit testimony regarding them. See *Parker*, supra (clear and convincing proof of a defendant's prior bad act is required for the evidence to be admissible). I disagree.

---

4. The absence of accident exception under *Lyle* is applicable to this case. There is no distinction between instances where the defendant claims he accidentally harms the child and where the defendant claims that the child accidentally harms himself. Such a distinction is arbitrary. In *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the defendant was charged with the second-degree murder of his infant daughter. The defendant's defense was that the daughter accidentally hurt herself when she fell off the couch. The Court allowed evidence of prior mistreatment of the infant daughter by the defendant to show an absence of accident. Appellant's defense—that Kindal had accidentally hurt himself while running through the house—is very similar to that used in *Estelle*. Whether the alleged accident arises from the defendant's actions or the child's, the result should be the same. If the defendant seeks to avail himself of the defense of accident, such defense may be negated. *See Lyle*, supra.

In *State v. Lopez,* 306 S.C. at 367, 412 S.E.2d at 393, we recognized the "battered child syndrome" (or "shaken baby syndrome").

> The finding of battered child syndrome and shaken baby syndrome is made based on a number of physical findings which are inconsistent with the history of the injuries given by the parents or caretakers. These syndromes have been developed as a result of extensive research and have become accepted medical diagnoses in other jurisdictions. We, therefore, conclude that testimony regarding the "battered child syndrome" and the "shaken baby syndrome" is admissible when given by a properly qualified expert and *such testimony may support an inference that the child's injuries were not sustained by accidental means.*

(Citations omitted) (emphasis added).

The United States Supreme Court has approved the use of prior injury testimony to support a finding of battered child syndrome regardless of whether the prior injuries were linked to the defendant. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).[5] In *Estelle,* the prosecution sought to prove battered child syndrome by introducing evidence of a prior rib and rectal injury. The defendant objected on the ground that there was no evidence the defendant had inflicted the injuries. The Court held:

> When offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is relevant even though it does not purport to prove the identity of the person who might have inflicted those injuries. Because the prosecution had charged McGuire with second-degree murder, it was required to prove that Tori's death was caused by the defendant's intentional act. Proof of Tori's battered child status helped to do just that; although not linked by any direct evidence to McGuire, the evidence demonstrated that Tori's death was the result of an intentional act by *someone,* and not an accident.

---

**5.** *See also United States v. Harris,* 661 F.2d 138 (10th Cir.1981) (trial court did not abuse discretion in admitting evidence of other injuries; probative value outweighed prejudice); *State v. Hassett,* 124 Idaho 357, 859 P.2d 955 (App.1993) (testimony of previous child abuse admissible); *State v. Everette,* supra.

502 U.S. at 67–69, 112 S.Ct. at 480 (citations omitted) (emphasis in original).

As in *Estelle*, the defendant in this case argued Kindal was accident-prone and that his death was an accident. The eye and lip injuries were not introduced to show that Appellant was the perpetrator of those injuries, but instead were introduced to show that Kindal was the victim of the battered child syndrome and his death was caused not by accident, but by the intentional acts of child abuse.[6] Such a ruling comports with the ruling of the United States Supreme Court in allowing this type of testimony in child abuse cases.[7]

Accordingly, I would affirm.

TOAL, A.J., concurs.

---

6. *Bludsworth v. State*, 98 Nev. 289, 646 P.2d 558, 559 (1982) involved a prosecution of the defendant for the murder of a two-year-old. The defense was that the child was accidentally injured. The court stated:

During the trial, considerable evidence was presented that Eric had sustained numerous bruises, including a bite mark on his scrotum, prior to the day of his fatal injury.... Appellants also erroneously argue that the bite mark evidence and evidence of other bruises were incompetent because there was no prior establishment, by clear and convincing evidence, that either [defendant] was responsible for each of the prior injuries. Admissibility of the bite mark and other bruise evidence does not depend on connecting either defendant to the infliction of the injury. It is independent, relevant circumstantial evidence tending to show that the child was intentionally, rather than accidentally, injured on the day in question. Proof that a child has experienced injuries in many purported accidents is evidence that the most recent injury may not have resulted from yet another accident.

7. *Estelle v. McGuire* is applicable to the present case even though the Access Medical personnel who testified to the prior eye and lip injuries were not "properly qualified experts". *Estelle* does not require that prior injury testimony be given by an expert witness, and neither does *State v. Lopez*. It is true that only a properly qualified expert is allowed to offer a *conclusion* that a child has been a victim of the battered child syndrome. However, evidence tending to prove that a child has been the victim of the battered child syndrome can be given by a lay witness, so long as other evidentiary rules are complied with. In this case, the Access Medical personnel testified to eye and lip injuries which tend to prove that Kindal has been the victim of the battered child syndrome. These lay witnesses did not render an opinion that the child was a victim of the battered child syndrome.