**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Mitchell Rivers, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2017-002302

---

Appeal From Chesterfield County
Roger E. Henderson, Circuit Court Judge

---

Unpublished Opinion No. 2023-UP-261
Heard December 5, 2022 – Filed July 12, 2023

---

**REVERSED AND REMANDED**

---

Appellate Defender Taylor Davis Gilliam and Appellate Defender Jessica M. Saxon, both of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General William M. Blitch, Jr., and Assistant Attorney General Chelsey Faith Marto, all of Columbia, for Respondent.

---

**PER CURIAM:** In this post-conviction relief (PCR) action, Appellant Mitchell Rivers (Rivers) seeks review of an order dismissing his claim of ineffective

assistance of counsel.  Rivers argues that the PCR court erred in finding that Rivers's trial counsel was not ineffective in failing to object to evidence related to the victim's injuries.  We reverse and remand.

## FACTS

On August 7, 2005, around 6:00 a.m., Rivers woke up to find his four-month-old adopted son (Victim) asphyxiated underneath his armpit.  In his initial interview with the police, Rivers stated that he successfully performed CPR on Victim, laid him down in the play pen, and went outside to mow the grass.  Later that morning, Kimberly Rivers, his wife and Victim's adoptive mother, found that Victim was no longer breathing and dialed 9-1-1.  Tragically, Victim died.

On September 19, 2005, after the autopsy report was filed, Rivers was re-interviewed by SLED officers, who found some inconsistencies in his prior statement.  After giving this new statement, Rivers was arrested and charged with homicide by child abuse (HCA).

At the pretrial hearing, trial counsel for Rivers moved to suppress evidence of collateral injuries.  The circuit court denied the motion, stating that "[t]hese child cases are getting a little different treatment than what we normally are use[d] to involving adult cases and other type criminal cases."  However, the court clarified that counsel was protected on the record on that motion.

At trial, the State called Dr. Janice Ross, a forensic pathologist, to testify to Victim's collateral injuries.  She stated that she found abrasions and bruises on Victim's scalp, abrasions on the back of Victim's head, and several rib fractures that were in the process of healing.  She indicated that some of the abrasions occurred contemporaneously with the asphyxiation but answered in the affirmative when asked whether these abrasions could have been the result of an overweight individual rolling over on a child.  Ron Martin, a paramedic on the scene of the incident, and Dr. Clay Nichols also testified to Victim's collateral injuries.  Counsel objected to the testimony of Dr. Nichols and Dr. Ross on the ground that their testimony was cumulative and speculative. However, he never raised the grounds set forth in his pretrial motion to suppress evidence of the collateral injuries.  Also, four of Rivers's family members, who were living at the house[1] at the time of the incident, testified

---

[1] It is unclear exactly how many people were living in the house at the time of the incident.  However, Wayne Jordan, the lead investigator of this incident, estimated that there were "somewhere of five to seven folks living in that home."

that Rivers never mistreated Victim.  At the trial's conclusion, the jury found Rivers guilty of HCA, and the circuit court sentenced Rivers to life imprisonment.

Rivers appealed to this court, which subsequently affirmed his conviction. *State v. Rivers*, 411 S.C. 551, 769 S.E.2d 263 (Ct. App. 2015).  The court found the issue of the admission of collateral injuries unpreserved.  *Id*. at 553, 769 S.E.2d at 265.[2]  Rivers later filed a PCR application for ineffective assistance of counsel.  The PCR court dismissed Rivers's PCR application.  This appeal followed.

## STANDARD OF REVIEW

"Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them."  *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "However, the [appeals c]ourt will reverse the lower court's decision if it is controlled by an error of law."  *Milledge v. State*, 422 S.C. 366, 374, 811 S.E.2d 796, 800 (2018).  "We review questions of law de novo, with no deference to trial courts."  *Smalls*, 422 S.C. at 180–81, 810 S.E.2d at 839 (footnote omitted).

## LAW/ANALYSIS

Rivers alleges that his trial counsel was ineffective by failing to object to evidence of the Victim's collateral injuries.  We agree.

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution."  *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013); *see also* U.S. Const. amend. VI.  "In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case."  *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

## I.     Prejudice

---

[2] When this case was first heard before this court, "the State admitted its strongest argument was the issue presented is unpreserved."  *Rivers*, 411 S.C. at 555 n.2, 769 S.E.2d at 266 n.2.

Rivers argues that he was prejudiced through evidence of prior bad acts presented to the jury. We agree.

To prove prejudice, an appellant must show a "reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (quoting *Strickland,* 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Rutland v. State*, 415 S.C. 570, 577, 785 S.E.2d 350, 353 (2016) (citing *Strickland*, 466 U.S. at 694). In making the determination of whether a PCR applicant met their burden, "we must consider the totality of the evidence before the jury." *Jones v. State*, 332 S.C. 329, 333, 504 S.E.2d 822, 824 (1998) (footnote omitted). "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.

A. Prior Bad Acts

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE; *see also State v. Lyle*, 125 S.C. 406, 417, 118 S.E. 803, 807 (1923) (indicating that the admission of prior bad acts creates propensity evidence that has "the inevitable tendency . . . to raise a legally spurious presumption of guilt in the minds of the jurors"). "It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b). "To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing." *State v. Fletcher*, 379 S.C. 17, 23, 664 S.E.2d 480, 483 (2008). "Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established." *Id*. at 24, 664 S.E.2d at 483. "Further, even though the evidence falls within a *Lyle* exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Brooks*, 341 S.C. 57, 62, 533 S.E.2d 325, 328 (2000).

When there is no proof offered to show that a defendant inflicted previous injuries, "testimony regarding [these] injuries is inadmissible[.]" *State v. Pierce*, 326 S.C. 176, 178, 485 S.E.2d 913, 914 (1997). However, "[w]hen a child is brought to an emergency room with injuries in various stages of healing, there is evidence of

recurring child abuse." *State v. Martucci*, 380 S.C. 232, 254, 669 S.E.2d 598, 609 (Ct. App. 2008). This court in *Martucci* warned that "[i]f the multiple, separately occurring injuries are not admissible in child abuse prosecutions, the crime would be virtually impossible to prove." *Id.*

While we appreciate the unique set of difficulties that encumber HCA prosecutions, this case is distinguishable from *Martucci*. In that case, the defendant sought to exclude testimony related to prior bad acts. *See id.* at 251, 669 S.E.2d at 608. A witness testified that the victim was abused "by slapping his face, taping his mouth shut, and dunking his head in the bathtub until he choked to stop him from crying." *Id.* at 241–42, 252–53, 669 S.E.2d at 603, 609. The court found that this testimony, combined with efforts to conceal the abuse, established the intent necessary for admissibility under Rule 404(b) and *Lyle*. *See id.* at 253, 669 S.E.2d at 609.

In the present case, we find it more difficult to establish a nexus between the collateral evidence and the circumstances surrounding Victim's death such that logical relevance may be established to prove intent. *See Lyle*, 125 S.C. at 417, 118 S.E. at 807 ("[I]f the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected."). We acknowledge the evidence of concurrent injuries but reiterate that Victim's injuries related to asphyxia are separate and chronologically distinct from other collateral injuries. Further—unlike the eyewitness testimony presented in *Martucci*—the only type of evidence regarding the cause of Victim's injuries is postmortem medical testimony. The weak chronological nexus between the prior injuries and Victim's death creates a high degree of unfair prejudice that requires excluding evidence of the [prior][collateral] injuries. *See Pierce*, 326 S.C. at 178, 485 S.E.2d 914 (finding evidence of prior child abuse inadmissible where there was negligible evidence that defendant inflicted the collateral injuries); *see also State v. Cutro*, 332 S.C. 100, 106, 504 S.E.2d 324, 327 (1998) (finding evidence of prior infant death and diagnosis of a second infant's Shaken Baby Syndrome inadmissible where there was insignificant evidence that defendant inflicted the injuries). Considering the entirety of the evidence in the record on appeal, there is a reasonable probability that a jury could find that the evidence of these prior bad acts was not clear and convincing. *See Fletcher*, 379 S.C. at 25, 664 S.E.2d at 483–84 (evidence for prior bad act testimony was inadmissible when there was no evidence connecting defendant to the prior bad act).

B. <u>Sufficiency of the Remaining Evidence</u>

The State argues that even if the collateral evidence is inadmissible, Rivers is still not prejudiced because counsel's failure to object did not affect the trial proceedings and the admission of this evidence amounted to harmless error. We disagree.

Section 16-3-85(A)(1) of the South Carolina Code (2015) (HCA statute) states in pertinent part:

> (A) A person is guilty of homicide by child abuse if the person:
>
> > (1) causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an *extreme indifference to human life*[.]

S.C. Code Ann. § 16–3–85 (emphasis added).

"For the purposes of the HCA statute, 'extreme indifference' has been defined as 'a mental state akin to intent characterized by a deliberate act culminating in death.'" *McKnight v. State*, 378 S.C. 33, 48, 661 S.E.2d 354, 361 (2008) (quoting *State v. Jarrell*, 350 S.C. 90, 98, 564 S.E.2d 362, 367 (Ct. App. 2002)). The State argues that the following establishes the "extreme indifference" sufficient to sustain an HCA claim:

> [Rivers] left his helpless child alone immediately after reviving him by CPR[;] [Rivers] did not call for follow-up medical attention[;] [Rivers] did not wake his wife to monitor or attend to the child, who by his testimony slept through his performing CPR on the Victim[; and Rivers] went outside and stayed outside until his wife woke and found the child dead.

(record citations omitted).

This court has found "extreme indifference to human life" in the HCA context when a defendant displays sheer apathy in the face of a life-threatening situation to a child. *See State v. Thompson*, 420 S.C. 192, 209, 802 S.E.2d 623, 631 (Ct. App. 2017) (finding extreme indifference where a mother failed to help her child bleeding

out through a shirt); *see also Jarrell*, 350 S.C. at 99, 564 S.E.2d 362 at 367 (finding extreme indifference when a mother left her child at her residence knowing that he would be killed). There is a stark difference between failing to act when doing so would prevent certain death, and negligently failing to follow up with additional care after an action which would have prevented death based on a mistaken belief that a child is no longer in danger.[3] Thus, in the absence of the prior-bad-acts evidence, there is a reasonable probability[4] that a jury could have had a reasonable doubt that Rivers exhibited an "extreme indifference to human life," integral to a finding of HCA.[5]

Therefore, the connection between the prior-bad-acts evidence and Victim's asphyxiation is tenuous and raises a "legally spurious presumption of guilt" that our supreme court cautioned against. *Lyle*, 125 S.C. at 417, 118 S.E. at 807; *see also Brooks*, 341 S.C. at 62, 533 S.E.2d at 328 ("When the prior bad acts are similar to the one for which the appellant is being tried, the danger of prejudice is enhanced."). Accordingly, the admission of the prior-bad-acts evidence was prejudicial such that it undermines confidence in the outcome of the trial.

## II.    Deficient Performance

"To prove trial counsel's performance was deficient, an applicant must show 'counsel's representation fell below an objective standard of reasonableness.'" *Smalls,* 422 S.C. at 181, 810 S.E.2d at 840 (quoting *Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005)). "[C]ounsel's strategic decisions will not be found to be deficient performance if he articulates a valid reason for employing the strategy." *Stone v. State*, 419 S.C. 370, 384, 798 S.E.2d 561, 569 (2017). "Under certain circumstances, [] counsel may employ a strategy of not objecting—even when counsel has a good argument for exclusion—if counsel reasonably perceives

---

[3] Rivers testified on cross-examination that "I made sure that [Victim] was breathing, breathing first, and when I saw he could breath[e] and his complexion came back, I thought he was okay, that's when I put him in the play pen, and then I left the room."

[4] Evidence of the contemporaneous injuries, while admissible, was not strong enough to offset the reasonable probability that those injuries could have happened accidentally.

[5] We note that our inquiry cannot supplant the jury's role as the finder of fact; instead we adduce that but for the prior-bad-acts evidence, there is a reasonable probability that a rational fact finder "would have had a reasonable doubt respecting guilt." *Catoe*, 372 S.C. at 331, 642 S.E.2d at 596.

the benefits of doing so are outweighed by some other consideration." *Id*. at 383, 798 S.E.2d at 568. "The necessary converse of this principle is that counsel's decision to employ a certain strategy will be deemed unreasonable under the Sixth Amendment if the reasons given for the strategy are not sound." *Id*. at 384, 798 S.E.2d at 569.

In the present case, counsel for Rivers failed to renew his pretrial motion when the evidence of prior bad acts was presented. Because no valid trial strategy was articulated by counsel, this mistake is sufficient to support a finding of deficient performance. Furthermore, a finding of deficient performance is also supported by trial counsel's failure to object on the ground that the evidence that Rivers committed the prior bad acts was not clear and convincing. *See Smalls*, 422 S.C. at 186, 810 S.E.2d at 842 (finding counsel deficient when not objecting to evidence that was not clear and convincing). Therefore, counsel was deficient in failing to raise the grounds set forth in the pre-trial motion to suppress.

For those reasons, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**

**GEATHERS and MCDONALD, JJ., and HILL, A.J., concur.**