509 S.E.2d 815

**The STATE, Petitioner,**

v.

**Bruce Howard TUBBS, Respondent.**

No. 24873.

Supreme Court of South Carolina.

Heard Sept. 23, 1998.

Decided Jan. 4, 1999.

Rehearing Denied Jan. 21, 1999.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert Deloach, III, and Solicitor Thomas E. Pope, of the Sixteenth Circuit, for petitioner.

Chief Attorney Daniel T. Stacey, and Assistant Appellate Defender Melissa J. Reed Kimbrough, all of South Carolina Office of Appellate Defense, for respondent.

TOAL, Justice:

In this criminal matter, we granted the State's petition for a writ of certiorari to review the Court of Appeals' unpublished opinion in *State v. Tubbs,* 97–UP–334 (Ct.App. filed May 19, 1997). The defendant in this case, Bruce Tubbs ("Defendant"), was convicted of burglary in the first degree and assault and battery with intent to kill.

## FACTUAL/PROCEDURAL BACKGROUND

The victim, Stephen O'Day ("Victim"), lived with his mother in York County. Also living at the house with the O'Days were Louise Boone and her four-year-old son. On the evening of March 26, 1993, Louise Boone and Victim got into an argument which resulted in Victim striking Boone several times with a vacuum cleaner pipe. Boone called her boyfriend, Mike Elton, and asked him to come pick her up.

At around 3:30 a.m., Elton, accompanied by Defendant and John Nagle, arrived at Victim's house to pick up Boone. Victim testified that despite his attempts to prevent Defendant and the others from entering the house, Defendant forced the door open and proceeded to stab Victim on his face, hand, and side. Defendant, on the other hand, testified that Victim initially let them into the house and later attacked Defendant in the kitchen with a butcher knife. Defendant claimed he stabbed Victim in self-defense.

At trial, the solicitor and several witnesses referred to Defendant by his nickname, "Cobra." In all, Defendant was referred to as "Cobra" approximately seven times in front of the jury. The first remark came during the State's re-direct examination of a Rock Hill police officer. The officer had testified under cross-examination by the defense that a person nicknamed "Rooster" was a suspect in the investigation. The officer further testified that he now knew that "Rooster" was not Defendant. On re-direct by the State, the following colloquy occurred:

Q. And you said based on your knowledge of nicknames that Rooster was not the defendant?

A. Based upon what I found out later.

Q. Did you find out later on who the defendant was or if he had a nickname?

A. Yes, I did.

Q. What was that nickname?

A. That nickname was Cobra.

The next mention of Cobra came during the State's cross-examination of Mike Elton. The solicitor asked Elton if he knew Defendant's nickname. Elton responded that Defendant's nickname was "Cobra." The third incident occurred again during the solicitor's cross-examination of Elton. The following exchange took place, in which defense counsel raised an objection:

Q. Who was driving the car when you left the house?

A. John.

Q. Where was Cobra sitting?

A. In the front seat.

[Defense:] Objection, your honor. My client's name is Bruce Tubbs.

[Court:] All right, refer to him by his appropriate name.

The next reference to "Cobra" came during the solicitor's cross-examination of John Nagle; the defense did not object. In the exchange, Nagle read a statement he had previously given to police. In the statement, Nagle had referred to Defendant as "Cobra." Nagle explained at trial that "Cobra" was Defendant's nickname.

The final three references to "Cobra" came during the State's closing argument. In the first instance, the solicitor stated, "What we are here to do, ladies and gentlemen, is to consider the evidence against Mr. Bruce Tubbs, also known as Cobra to his friends ." The second instance was objected to by the defense:

Solicitor: Mr. Elton never saw anything happen between Cobra and Mr. O'Day—

Defense: Objection, your honor. I would ask him to please refer to people by their proper name.

Court: I overrule your objection; this is argument.

In his last reference to "Cobra," the solicitor stated, "So, you've got Cobra's word against Stephen O'Day's word."

The Court of Appeals found that the trial judge erred in overruling defense counsel's objection to the nickname "Co-

bra" during closing argument. The court held that the solicitor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. The court therefore reversed the trial court and remanded for a new trial.

We granted the State's petition for a writ of certiorari to consider whether the Court of Appeals erred in reversing the trial court based upon the solicitor's references to "Cobra."

## LAW/ANALYSIS

The State argues that the solicitor's references to Defendant as "Cobra" were harmless because they were isolated and cumulative to the record. We agree that the references to "Cobra" were harmless.

Relying on *State v. Hawkins*,[1] the Court of Appeals held that Defendant was denied a fair trial. In *Hawkins,* we applied the following standard for determining whether a prosecutor's remarks deprived the accused due process of law: "the relevant question ... is whether the prosecutor's comments '*so infected the trial with unfairness as to make the resulting conviction a denial of due process.*'" 292 S.C. at 421, 357 S.E.2d at 12 (emphasis added) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 437 (1974)). The solicitor in *Hawkins* referred to the defendant's nickname, "Mad Dog," over forty times during the guilt phase and sentencing proceedings. The trial court overruled defense counsel's initial objection. We held that it was permissible for the solicitor to make inquiry sufficient to clarify the defendant's identity. However, the excessive and repetitious use of the term "Mad Dog" denied the defendant a fair trial and infected the sentencing proceedings with an arbitrary factor in violation of the Eighth Amendment to the United States Constitution.

In the instant case, the Court of Appeals noted that there was no question concerning the identity of the assailant be-

[1]. 292 S.C. 418, 357 S.E.2d 10 (1987), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

cause Defendant admitted stabbing Victim in self-defense. The court concluded that the references to Defendant as "Cobra" were especially damaging since the case hinged on whether the jury believed Victim's or Defendant's version of events.

 Arguments must be confined to evidence in the record and reasonable inferences therefrom, although failure to do so will not automatically result in reversal. *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996). A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *accord State v. Hawkins*, 292 S.C. at 421, 357 S.E.2d at 12. "[I]t is not enough that the remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144, 157 (1986).[2]

██▌ In the instant case, Defendant's nickname came up only seven times during the entire trial. This is compared with the over forty times in *Hawkins*. Moreover, the first two references to "Cobra" were not objected to by defense counsel. Additionally, at least one of the seven instances was justified to properly establish Defendant's identity. During cross-examination, Nagle was asked by the solicitor to read a statement he had given to police the day after the stabbing incident. In the statement, Nagle had stated, "Cobra had had about 12 beers in all." The solicitor then asked Nagle who "Cobra" was. Nagle responded that "Cobra" was Defendant.

---

2. In *Darden*, the United States Supreme Court found that the *Donnelly* test for finding a due process violation had not been met because (1) the prosecutor's comments were an invited response to defense counsel's arguments, (2) the evidence against the defendant constituted overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges, and (3) the trial court clearly instructed the jurors that arguments of counsel may not be considered as evidence. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144. Though we find none of these factors present in the instant case, the question remains whether the State's references to "Cobra" were excessive and repetitious so as to deny Defendant due process of law.

We find that the solicitor did not manipulate or misstate the evidence in this case. We hold that the solicitor's references to "Cobra" during summation, though undesirable, constituted an occasional use of Defendant's nickname and did not infect the entire trial with unfairness as to deprive Defendant due process of law. *See Arnold v. Evatt,* 113 F.3d 1352 (4th Cir.1997) (death penalty case in which the solicitor's occasional use of the defendant's nickname, "Mad Dog," during the guilt phase and resentencing proceedings did not deny defendant due process of law), *cert. denied,* ⸺ U.S. ⸺, 118 S.Ct. 715, 139 L.Ed.2d 655 (1998).

Further, in a case such as this, the alleged injury does not involve the denial of a benefit of a specific provision of the Bill of Rights. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431.[3] Where specific guarantees of the Bill of Rights are involved, such as the right to counsel, a court must insure that prosecutorial conduct in no way impermissibly infringed such rights. *Id.* This is contrasted with the instant case where reversal is warranted only if the prosecutor's remarks so infected the entire trial with unfairness as to make the resulting conviction a denial of due process. *Id.* We find no such constitutional infringement here.

### CONCLUSION

Based on the foregoing, the Court of Appeals' decision is **REVERSED.**

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.

---

3. In *Donnelly,* the defendant's claim of constitutional error focused on two remarks made by the prosecutor during closing argument. The first remark involved the prosecutor's personal opinion as to the defendant's guilt. The second comment was directed at the defendant's motives in standing trial. The Court found that the prosecutor's remarks did not deny the defendant due process of law.