513 S.E.2d 385

**The STATE, Respondent,**

v.

**Derrick FORD and Anthony Brown, Appellants.**

**No. 2955.**

Court of Appeals of South Carolina.

Heard Feb. 10, 1999.

Decided March 8, 1999.

446

Senior Assistant Appellate Defender Wanda H. Haile and Assistant Appellate Defender Melody J. Brown, both of SC Office of Appellate Defense, of Columbia, for appellants.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Wade S. Kolb, Jr., of Columbia, for respondent.

GOOLSBY, Judge:

Derrick Ford and Anthony Brown appeal their convictions for one count each of common law robbery and one count each of criminal conspiracy. We affirm.

## FACTS

On December 17, 1995, Theodore Wells was standing outside the apartment complex where his mother lived. While talking with his friend Tracey Commander, Wells noticed a green car circling the complex. When the car stopped, Ford jumped out and ran toward Wells with one hand in his pants. Wells fled to the front of his mother's apartment to escape Ford, only to find Brown waiting for him. Wells alleged Brown put him in a headlock while Ford robbed him of $200 at gunpoint. When Wells's mother came to the door of her apartment asking what was happening, Ford and Brown fled.

Wells reported the robbery to the police the next day, identifying both Ford and Brown by name. Detective Hicks,

the investigating officer, asked Wells to view a photographic lineup because Wells had mistakenly given an incorrect first name for defendant Ford. Wells picked Ford out of the lineup. The Sumter County Grand Jury subsequently indicted Ford and Brown for armed robbery and criminal conspiracy.

The state brought the case for trial before Judge Marc Westbrook and a jury in July 1997. After the court drew a jury, the state brought a motion to quash the panel based on racially discriminatory strikes by the defense. The court granted this motion and drew a second jury. Both the state and the defense moved to quash the second jury, but the trial court denied both motions. The second jury tried the case.

At trial, Commander corroborated Wells's testimony about the robbery. Commander said he ran across a field to call the police when he saw what was happening. Commander also positively identified Ford and Brown as the two men who robbed Wells. Although Wells told him after the robbery that Ford used a gun, Commander did not see a gun. Wells's mother testified that she heard some noise while in her apartment and opened the door to see what was happening. She said she saw two men holding her son, so she asked what was going on, whereupon the men fled. Wells then told her that the men had just robbed him at gunpoint. She saw neither a gun nor the assailants' faces.

The jury found both defendants guilty of robbery and conspiracy and not guilty of possession of a weapon during a violent crime. The judge sentenced Ford to fifteen years imprisonment, suspended upon five years service, for robbery and to five years concurrent imprisonment for conspiracy. The judge sentenced Brown to fifteen years imprisonment for robbery and to five years imprisonment for conspiracy, with sentences running concurrently. This consolidated appeal follows.

## DISCUSSION

### I. Ford's Appeal

#### A. *Batson*

Ford argues the trial judge erred in allowing the second selected jury to stand because the state failed to

provide the proof requested by the trial court to rebut a claim of racial discrimination against a juror. We find no error.

After the first jury selection, the State made a *Batson*[1] motion, alleging that Ford and Brown struck white jurors in a racially discriminatory manner. The judge held a hearing and granted the state's motion to quash the panel. The judge then entertained the defendants' *Batson* motion alleging racially discriminatory strikes by the solicitor. The solicitor explained the strike of one African–American female by stating that her employer was involved in drug activity and the prosecution did not want to seat a juror that might be hostile to law enforcement. The trial judge denied the defense motion, but asked the solicitor to produce documentation on the woman's employer. The solicitor ultimately produced the requested documentation, but it is not clear when it was entered into the record.

After the judge quashed the first jury, he had a second jury drawn. The prosecution struck as an alternate the woman whose employer was linked to drug activity. At the end of the jury selection process, the judge held another *Batson* hearing at the solicitor's request. During this hearing, the trial court reviewed strikes for both sides and found no improper racial discrimination. Brown now argues the second *Batson* hearing was insufficient because the state never provided the requested documentation to support their strike of the potential juror.

Even if the judge erred in accepting the solicitor's reasoning for the second strike of the potential juror, the error would be harmless as the prosecution struck the woman as an alternate and the use of alternates was not necessary during the trial. Any *Batson* violation in regards to a possible alternate juror is harmless where an alternate was not needed for deliberations. *State v. Green,* 301 S.C. 347, 354, 392 S.E.2d 157, 161 (1990); *State v. Thompson,* 304 S.C. 85, 89, 403 S.E.2d 139, 141 (Ct.App.1991).

### B. Photo Line–Up

■ Ford next argues that the admission of a line-up including a photograph of him was unnecessary for identifica-

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

tion purposes because the victim testified that he knew Ford and was unduly prejudicial because it was prepared from police "mug-shots." We find no error.

█ The introduction of a "mug-shot" of a defendant is reversible error unless: (1) the state has a demonstrable need to introduce the photograph, (2) the photograph shown to the jury does not suggest the defendant has a criminal record, and (3) the photograph is not introduced in such a way as to draw attention to its origin or implication. *State v. Tate*, 288 S.C. 104, 341 S.E.2d 380 (1986); *State v. Robinson*, 274 S.C. 198, 262 S.E.2d 729 (1980); *State v. Denson*, 269 S.C. 407, 237 S.E.2d 761 (1977) (citing *United States v. Harrington*, 490 F.2d 487 (2d Cir.1973)).

We find that the lineup was admissible because the state had a demonstrable need to introduce the photos and because there was nothing about the photographs or the way they were introduced that suggested Ford had a prior criminal record. The arrest warrant, as originally signed by Wells, was erroneously made out for "Michael D. Ford," because that was the name by which Wells knew Ford.[2] Ford's name is actually "Derrick Germaine Ford." The solicitor, therefore, was entitled to show Wells had identified Ford by appearance, as well as (erroneously) by name, before the warrant was executed. Furthermore, though Detective Hicks took the photographs in the lineup from the "mug-shot" file, he displayed them in such a way as to hide any indication of their origin.[3] When the solicitor introduced the lineup and when Hicks later testified about it, they did not reveal the origin of the photographs. Consequently, the trial court did not abuse its discretion in admitting the lineup.

## C. Evidence of Other Bad Acts

█ Ford argues as his third issue on appeal that the trial judge erred in allowing testimony about other bad acts. We

**2.** The victim testified that people "on the street" had told him Ford's name was Michael, but the investigating officer testified that he had suggested the name Michael D. Ford to the victim.

**3.** Only the heads and necks of the individuals in the lineup photographs were visible in the photo lineup. The remainder of each photograph was cut away. No identifying clothing or placards were visible in the lineup.

find that the evidence was properly admitted under *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

During trial, the solicitor sought to admit Wells's testimony that Ford and Brown robbed him at gunpoint in August of 1995, telling him that they would shoot him in the head if he did not give them $200 every time he saw them. Wells further testified that Ford and Brown had attempted to rob him again in· October of 1995. Wells's testimony about the October incident was corroborated by Detective Hicks.[4] The solicitor argued the evidence was admissible as part of the *res gestae* and· also was admissible under *Lyle* because it was needed to explain their theory that Ford and Brown targeted Wells. Ford and Brown argued the evidence was not admissible as *res gestae* or under any of the exceptions created by *Lyle.* The judge, however, ruled that the evidence could be admitted as *res gestae* or under the *Lyle* exceptions of motive, intent, and common scheme or plan.

 Although evidence of other criminal acts by a defendant is generally not admissible to prove the defendant's propensity to commit the crime with which he has been charged, such evidence may be admitted to prove motive, intent, identity of the perpetrator, lack of accident or mistake, or common scheme or plan. Rule 404(b), SCRE. *See also State v. Hough,* 325 S.C. 88, 480 S.E.2d 77 (1997); *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). These *"Lyle* exceptions" require that there be a logical connection between the other criminal acts and the crime charged. *State v. Lyle,* 125 S.C. at 417, 118 S.E. at·807; *State v. Carter,* 323 S.C. 465, 476 S.E.2d 916 (Ct.App.1996). The common scheme or plan exception, in particular, requires not just similarity of the other acts to the crime charged, but also a close relationship between the crimes. *State v. Timmons,* 327 S.C. 48, 488 S.E.2d 323 (1997); *State v. Moultrie,* 316 S.C. 547, 554, 451 S.E.2d 34, 39 (Ct.App.1994) ("evidence of prior crimes or bad acts that is logically relevant is ... admissible to prove ... a common scheme or plan that embraces several previous crimes so closely related to each other that proof of one tends to establish the other").

---

4. Hicks investigated the October incident as well as the December incident.

■ The evidence of the other acts must be at least clear and convincing to be admitted under *Lyle,* unless the prior criminal acts were the subject of a conviction or indictment. *State v. Parker,* 315 S.C. 230, 433 S.E.2d 831 (1993); *State v. Smith,* 300 S.C. 216, 387 S.E.2d 245 (1989). The court also must determine that the probative weight of the evidence of other criminal acts outweighs its prejudicial effect. *State v. Parker,* 315 S.C. at 233, 433 S.E.2d at 832.

In the present case, the fact that Ford and Brown had previously robbed or attempted to rob Wells was a necessary element in understanding their motive and intent when they accosted Wells on December 17, 1995. *Cf. State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996) (defendants participation in an earlier convenience store robbery held admissible under *Lyle* because it establishes his intent and motive when present at a second convenience store robbery); *State v. Simmons,* 310 S.C. 439, 427 S.E.2d 175 (1993) (finding evidence of prior attacks on elderly women admissible to show defendant's intent in entering home of an elderly woman), *rev'd on other grounds,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). The statement that Wells should be prepared to give money to the defendants each time he saw them was, in particular, so closely related to the criminal conspiracy charged that proof of the statement tends to establish the existence of a common plan and, thus, of the conspiracy. The previous robbery and attempted robbery also were so similar to the incident for which Ford and Brown were charged that they tend to establish both the existence of a common plan and the fact that the plan was being carried out. *Cf. State v. Raffaldt,* 318 S.C. 110, 456 S.E.2d 390 (1995) (holding evidence of marijuana dealing by the defendant in prosecution for trafficking in cocaine was admissible as indicative of a common scheme or plan); *State v. Moultrie,* 316 S.C. at 555, 451 S.E.2d at 39 (holding evidence of defendant's prior drug deals was admissible to prove existence and nature of marijuana trafficking scheme).

■ Because Ford and Brown disputed the state's allegations about their motives and intent, the evidence of these other acts was highly probative of their guilt on the robbery charge. These previous acts were even more probative of guilt on the conspiracy charge because they tended to estab-

lish the scope and existence of the common plan that constituted the conspiracy. *Cf. State v. Amerson,* 311 S.C. 316, 319, 428 S.E.2d 871, 873 (1993) ("Generally, the agreement, which is the essence of the conspiracy, is proven by various overt acts committed in furtherance of the conspiracy."). Consequently, the probative value of the evidence was so great that it substantially outweighed any prejudice. *See State v. Gilchrist,* 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct.App.1998) (" 'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.' ") (*quoting United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)).

■ The evidence of these other acts also was clear and convincing. Wells testified from direct knowledge that Ford and Brown committed the earlier robbery and attempted robbery. Moreover, Wells's testimony was partially corroborated by Detective Hicks. *Cf. State v. Aiken,* 322 S.C. 177, 470 S.E.2d 404 (Ct.App.1996) (holding testimony of a juvenile coconspirator that defendant was involved in a series of robberies constituted clear and convincing evidence for purposes of *Lyle* exception). Since the testimony about the prior robbery and attempted robbery was relevant to the defendants' motives and intent, was relevant to the existence of a common plan, was more probative than prejudicial, and was clear and convincing, the trial judge did not err in admitting the testimony under *State v. Lyle.*

Because the testimony of the previous acts was admissible under *Lyle,* we need not address the issue of admissibility as part of the *res gestae.*

■ Ford also argues that testimony about certain threats made by Ford against Wells was erroneously admitted. Wells testified that Ford had made these threats after charges had been brought against Ford and Brown. Ford, however, never objected to the admission of this testimony.[5] As such, the

---

5. The state submitted testimony about these subsequent threats in a proffer made when the trial court was deciding whether to admit the testimony about the previous robbery and attempted robbery. When the trial judge ruled on admissibility, however, he only ruled on the admissibility of the testimony about the prior robbery and robbery

issue is not preserved for appellate review. *State v. Williams,* 303 S.C. 410, 401 S.E.2d 168 (1991) (issues not raised to and ruled on by the trial court are not preserved for appeal).

## D. Admissibility of Ford's Traffic Conviction

■■■ In his fourth issue on appeal, Ford argues that the trial court erred in ruling that, if he testified, he could be impeached with a conviction for failure to stop for a blue light. This issue is not preserved because Ford did not testify. *State v. Glenn,* 285 S.C. 384, 385, 330 S.E.2d 285, 286 (1985) ("when the trial judge chooses to make a preliminary ruling on the admissibility of prior convictions to impeach a defendant and the defendant does not testify at trial, the claim of improper impeachment is not preserved for review").

## E. *King* Charge

■■■ In Ford's final issue on appeal, he challenges the *King* charge given by the court to the jury at Ford's request. A *King* charge informs the jury that they should find the defendant guilty of the lesser included offense rather than the principal offense if they have a doubt about which is applicable. *State v. King,* 158 S.C. 251, 155 S.E. 409 (1930).

This issue is not preserved for appellate review because Ford did not object to the instruction as given at trial. When a charge is inadequate as given, a party must request further instructions or object on grounds of incompleteness to preserve the issue for review. Rule 51, SCRCP (party may not complain about instructions on appeal unless objected to at trial); *Jackson v. Speed,* 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997). When the trial court completed jury instructions, Ford's counsel questioned whether the requested *King* charge had been given. The trial judge said he had given the charge, and Ford's counsel did not object any further: counsel thereby waived any argument about the adequacy of the charge given.

---

attempts. The trial judge never ruled on the admissibility of the threats made after charges were brought against Ford and Brown. As such, defense counsel should have objected to Wells's testimony before the jury to preserve the issue of the admissibility of these threats for appellate review. The defense never made such an objection.

## II. Brown's Appeal

### A. Evidence of Other Bad Acts

Brown also challenges the admission of testimony concerning the prior robbery and robbery attempt. For the reasons discussed above, we find no error.

### B. *Batson*

Brown argues in his second issue on appeal that the trial judge erred in failing to conduct a complete *Batson* hearing after the second jury was chosen. Like Ford, Brown argues the hearing was not complete because the solicitor never provided the documentation the court requested to support the strike of the woman whose employer was potentially biased against the state. As in Ford's appeal, any error concerning the seating of this juror is harmless as she was struck as an alternate and the alternates were never needed for deliberation.

**AFFIRMED.**

HOWELL, C.J., and CONNOR, J., concur.