THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Michael Brian Flynn,       
Appellant.
 
 
 

Appeal From Charleston County
Luke N. Brown, Jr., Circuit Court Judge

Unpublished Opinion No. 2003-UP-004
Submitted October 22, 2002  Filed January 
 6, 2003

AFFIRMED

 
 
 
Deputy Chief Appellate Defender Joseph L. Savitz, III, of 
 Columbia, for appellant.
Attorney General Charles M. Condon, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka; 
 Assistant Attorney General S. Creighton Waters, all of Columbia; and Solicitor 
 Ralph E. Hoisington, of N. Charleston, for respondent.
 
 
 

 PER CURIAM:  Michael Brian 
 Flynn was convicted of murder, assault and battery with intent to kill, first-degree 
 burglary, armed robbery, and criminal conspiracy.  Flynn was sentenced to life 
 imprisonment without the possibility of parole for murder, assault and battery 
 with intent to kill, first-degree burglary, and armed robbery, and five years 
 for conspiracy, all to run concurrently.  Flynn appeals arguing the trial court: 
 (1) violated his due process rights by allowing repeated references to Flynn 
 by the pejorative nickname Creep and (2) erred in admitting evidence that 
 Flynn was affiliated with the Crips gang because the prejudicial effect of the 
 evidence far outweighed its probative value.
FACTUAL/PROCEDURAL BACKGROUND
The State presented the following evidence 
 in support of the conviction.  Flynn was a member of the Folks gang, a gang 
 closely associated with the Crips gang.  On May 3, 1999, Flynn and several gang 
 members were at the home of the leader of the local Crips gang, planning the 
 robbery of a house they believed belonged to a drug dealer who was known to 
 keep large sums of money.  Part of the reason for the robbery was to obtain 
 $5,000 needed to bond the Crips gang leader out of jail. 
Late in the evening, Flynn and five other people, 
 some of whom were known gang members, drove to the house they believed belonged 
 to the drug dealer.  Flynn and two others exited the cars and placed bandanas 
 over their faces while walking to the house.  According to the testimony, the 
 bandanas were the gang colors.
Two adult males, one adult female, and one child 
 were inside the house.  One of the two people with Flynn removed the bandana 
 from his face and knocked on the door.  After a brief conversation with the 
 person who answered the door, all three assailants burst into the house.  The 
 two male victims were hit by gunfire.  The assailants demanded money and drugs.  
 One of the male victims offered to walk the assailants through the house to 
 prove that there was no money in the house.  This act allowed the other male 
 victim to escape.  After looking in the rear of the house, the assailants walked 
 the remaining male victim back to the living room where he was shot approximately 
 ten times.  He died of these wounds.  
At a joint trial with codefendant Robert Antonio Sneed, 
 both were convicted of murder, assault and battery with intent to kill, first-degree 
 burglary, armed robbery, and criminal conspiracy.  Flynn appeals.
DISCUSSION
I. Use of nickname
On appeal, Flynn first argues the trial court violated 
 his due process rights by allowing repeated references to his pejorative nickname, 
 Creep.
At trial, the use of a nickname can deprive the defendant 
 of due process if the use of the nickname is so excessive and repetitious as 
 to infect the entire trial with unfairness. State v. Day, 341 S.C. 410, 
 423, 535 S.E.2d 431, 438 (2000) (holding the use of the nickname Outlaw was 
 used repeatedly by the solicitor for no other reason than to attack the defendants 
 character); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) 
 (holding the defendant is entitled to relief when the trial is so infected 
 . . . with unfairness as to make the resulting conviction a denial of due process).  
 The determination of a due process violation is based on an examination of 
 the entire proceedings. Donnelly, 416 U.S. at 643; see State 
 v. White, 246 S.C. 502, 505-06, 144 S.E.2d 481, 482 (1965) (holding the 
 decision as to whether the defendant was prejudiced by language used so as to 
 deny him a fair and impartial trial is based on a review of the whole case).  
 In deciding whether a defendants due process rights were violated, [e]vidence 
 concerning a defendants . . . nickname is not prejudicial when used to prove 
 something at issue in a trial, such as the identification of the defendant.  
 Day, 341 S.C. at 422, 535 S.E.2d at 437; see State v. Tubbs, 
 333 S.C. 316, 321, 509 S.E.2d 815, 818 (1999) (holding the solicitors clarification 
 of the person referenced when a witness called a person by a nickname was justified 
 to establish identity).
Flynn is known by the nickname Creep.  At trial, 
 three of the seven witnesses who personally knew Flynn referred to him throughout 
 their testimony by his nickname. [1] 
Flynn was indicted as Michael Brian Flynn AKA Creep.  At 
 the beginning of trial, the trial judge identified Flynn by his nickname on 
 two occasions during voir dire.  The judge, the solicitor, and the co-defendants 
 counsel referred to Flynn as Creep on sixteen occasions in approximately 950 
 pages of testimony.  In addition, during cross examination of one of the States 
 witnesses, Flynns attorney asked, What about all of these statements you said 
 were made in front of you so that you could tell them today about Creep said 
 this, Creep said that, Creep did this, Creep did that.  
The solicitor referred to Flynn as Creep in seven of his 
 questions.  In three of those questions, the solicitor was clarifying the person 
 to whom the witness was referring, as in the following testimony:
          SOLICITOR: Okay. Anybody else there?
          Witness: Um, Creep was, Mickey.
          SOLICITOR: When you say Creep, who are 
 you referring to?
          Witness: Michael Flynn.
In the four instances where the solicitor was not seeking 
 to clarify Flynns identity when using his nickname, the solicitor did not attempt 
 to exploit any negative connotation associated with it and did not ask any questions 
 as to why Flynn was referred to as Creep. 
 [2] See Day, 341 S.C. at 422-23, 535 S.E.2d at 438-39 (holding 
 it was reversible error for the solicitor to repeatedly refer to the defendant 
 by his nickname, Outlaw, during her closing argument to paint a picture of 
 the defendant as someone who was proud of breaking the law). 
In addition, the solicitor did not use Flynns nickname in 
 either opening statement or closing argument. See State v. Hawkins, 
 292 S.C. 418, 420-22, 357 S.E.2d 10, 12-13 (1987) (holding the trial was infected 
 with unfairness when the solicitor used the nickname Mad Dog to refer to the 
 defendant on countless occasions during voir dire, trial, closing, and sentencing).
The introduction of  Flynns acknowledged nickname 
 as Creep was proper for identification purposes.  Most of the attorneys references 
 to the nickname clarified witnesses testimony, and none were obviously used 
 to emphasize the name in an attempt to disparage Flynn.  Looking at the entire 
 transcript, we conclude the use of the nickname did not infect the proceeding 
 with unfairness so as to deprive Flynn of a fair trial. See Tubbs, 
 333 S.C. at 321-22, 509 S.E.2d at 818 (holding solicitors reference to the 
 defendants nickname did not infect the entire trial with unfairness as it was 
 used only seven times and in one of the instances it was used to establish identity).
II. Evidence of gang affiliation
Flynn next argues the trial court erred in allowing 
 the introduction of evidence that Flynn was affiliated with the Crips gang because 
 the prejudicial effect of the evidence far outweighed its probative value. [3] 
Evidence of other crimes or bad acts 

is admissible . . . when it tends to establish motive, identity, 
 a common scheme or plan, the absence of mistake or accident, or intent.  In 
 addition, the bad act must logically relate to the crime with which the defendant 
 has been charged.  If the defendant was not convicted of the prior crime, evidence 
 of the prior bad act must be clear and convincing.  Finally, even if the evidence 
 meets the above criteria, the trial judge must exclude it if its probative value 
 is substantially outweighed by the danger of unfair prejudice to the defendant. 

State v. Beck, 342 S.C. 129, 135-36, 536 
 S.E.2d 679, 682-83 (2000) (internal citations omitted); Rule 404(b), SCRE; Rule 
 403, SCRE; State v. Ford, 334 S.C. 444, 453, 513 S.E.2d 385, 389 (Ct. 
 App. 1999) (Unfair prejudice does not mean the damage to a defendant's case 
 that results from the legitimate probative force of the evidence; rather it 
 refers to evidence which tends to suggest decision on an improper basis.). 
 A trial courts decision regarding the comparative probative value versus prejudicial 
 effect of evidence should be reversed only in exceptional circumstances.  State 
 v. Hamilton, 344 S.C. 344, 357, 543 S.E.2d 586, 593 (Ct. App. 2001); see 
 State v. Alexander, 303 S.C. 377, 380 , 401 S.E.2d 146, 148 (1991) (holding 
 evidentiary rulings by the trial court will not be reversed on appeal absent 
 an abuse of that discretion).
As to the first prong, the evidence of Flynns gang 
 affiliation demonstrated motive.  Flynn was a member of the Folks gang, a gang 
 closely associated with the Crips gang according to the testimony.  When Flynn 
 and others began planning the robbery they were at the house of the leader of 
 the local Crips gang, plotting a way to obtain enough money to bond the gang 
 leader out of jail.  The plan to raise money for the leader of the gang demonstrated 
 the motive for the robbery and thus was a proper reason to allow information 
 about Flynns gang affiliation into evidence. See State v. Beck, 
 342 S.C. 129, 135-36, 536 S.E.2d 679, 682-83 (2000); Rule 404(b), SCRE; Rule 
 403, SCRE; State v. Ford, 334 S.C. 444, 453, 513 S.E.2d 385, 389 (Ct. 
 App. 1999).
In addition, the evidence corroborated the testimony 
 of the victims who said that two assailants wore bandanas as masks during the 
 attack.  Flynns confederates testified that Flynn wore a bandana the night 
 of the robbery and that he often wore the bandana that signified his gang colors.  
 Thus, Flynns possession of an item worn in the robbery was relevant to show 
 identity. [4] 
Flynn does not argue on appeal that the reference 
 to his gang affiliation was not logically related to the crime committed and 
 was not proven by clear and convincing evidence.  Moreover, even if this second 
 prong had been argued, Flynns gang affiliation logically relates to the armed 
 robbery as it is relevant to the motive for the robbery.  Furthermore, because 
 at least four witnesses testified that Flynn was in some way affiliated with 
 a gang during the planning and commission of the crimes, there was evidence 
 to support the trial judges conclusion that clear and convincing evidence was 
 presented on this point. [5] See State v. Wilson, 
 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).   
Finally, the trial court concluded there 
 was no danger of unfair prejudice to Flynn from this evidence.  Therefore, the 
 trial court did not abuse its discretion in admitting evidence as to Flynns 
 affiliation with the Crips gang. See State v. Braxton, 343 S.C. 
 629, 634, 541 S.E.2d 833, 835-36 (2001) (holding probative value substantially 
 outweighed possibility of prejudice when the identity of the user of the murder 
 weapon was crucial); Ford, 334 S.C. at 452, 513 S.E.2d at 389 (holding 
 evidence of a prior crime against victim was highly probative when defendants 
 disputed States allegations of motive and intent).  
CONCLUSION
For the foregoing reasons, the trial courts decision 
 is
AFFIRMED. [6] 
CONNOR, STILWELL, and HOWARD, JJ., concur.

 
 
 [1] Two of these witnesses used nicknames to refer to numerous associates 
 throughout their testimony.  As to Flynns nickname, one of the male witnesses 
 referred to Flynn as Creep on approximately seven occasions.  One of the female 
 witnesses made the vast majority of references to Flynn as Creep, calling 
 him by his nickname on approximately forty-five occasions. 

 
 
 [2] The four questions asked by the solicitor are as follows: Do you 
 know what Mr. Flynns nickname is?; Okay, how do you know Creep and Joby 
 had guns?; So you were aware when Creep was on the telephone call, I mean 
 telephone?; and Creep said what?.  The first question was asked on redirect 
 after the codefendants counsel had used the nickname in a question without 
 identifying to whom the nickname referred.  The other three questions immediately 
 followed the use of the nickname by the witness. 

 
 
 [3] In Flynns brief, counsel stated, Finally, reference to a defendants 
 involvement with a gang may violate the First Amendment. See Dawson 
 v. Delaware, 503 U.S. 159 (1992).  This issue is not properly presented 
 for appeal. See Rule 208(b)(1)(D), SCACR (stating the brief of the 
 appellant must contain a discussion of the issue with citations of authority).

 
 
 [4] Evidence of gang affiliation was also properly used by the prosecution 
 to explain a prior inconsistent statement by one of its witnesses.  The testimony 
 of the witness explained why the witness lied in his first statement to police, 
 falsely implicating someone that he later admitted was not involved in the 
 robbery.  The witness explained that he had falsely implicated the individual 
 as retribution because the individual had sent a blue Bible wrapped in a red 
 bandana to the gang leaders home.  The witness explained that this was considered 
 by the gang to be an act of total disrespect.  

 
 
 [5] Only one of the witnesses mentioned Crips as the name of the gang. 
 

 
 
 [6] Because oral argument would not aid the Court in resolving 
 any issue on appeal, we decide this case without oral argument pursuant to 
 Rule 215 and 220(b)(2), SCACR.